

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STEPHEN THOMAS YELVERTON    )
                )
   Appellant/Debtor         )
                )
STEPHEN THOMAS YELVERTON    )
                )   Civil Action No. 1:13-cv-00454-RLW
       v.          )
                )
WENDELL W. WEBSTER       )   Bankruptcy Proceeding No. 09-00414
   Chapter 7 Trustee       )

Appeal from the United States Bankruptcy Court
for the District of Columbia

BRIEF AND ADDENDUM OF APPELLANT

Stephen Thomas Yelverton, Esq., Pro Se
D.C. Bar No. 264044
601 Pennsylvania Ave., N.W.,
Suite 900 South
Washington, DC 20004
Tel. 202-702-6708
Fax: 202-403-3801
styelverton@yelvertonlaw.com

**RECEIVED**

APR 1 9 2013

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## Table of Contents

Page(s)

Table of Cases and Authorities…………………………………….. 3

Statement of Basis of Appellate Jurisdiction…………………………. 4

Statement of the Issues Presented…………………………………… 4

Statement of Applicable Appellate Review…………………………… 4

Statement of the Case……………………………………………… 5

Statement of the Facts……………………………………………… 8

Arguments…………………………………………………………… 9

  (a) The Orders as to the Exemptions are Not Final because
     related Claims as to Exemptions have not been resolved…………… 9

  (b) The Bankruptcy Court must be Directed to allow the Exemptions
     claimed by the Debtor in view of him meeting the statutory and
     legal requirements under 11 U.S.C. 522 (b)(3)(B)……………… 10

  (c) The Exemption of property from the Debtor Estate is
     Retroactive and Nunc Pro Tunc to the date of the Petition
     for Bankruptcy on May 14, 2009……………………………… 12

  (d) The Bankruptcy Court erroneously denied the Application
     for In Forma Pauperis status filed by the Debtor for waiver
     of the Appeal filing fee………………………………………… 13

Summary……………………………………………………………. 14

Conclusions………………………………………………………… 14

Certificate of Service……………………………………………….. 15

Addendum and Reproduction of Statutes and Rules…………………… 16

Table of Cases and Authorities

Page (s)

11 U.S.C. 522 (b) and (d)………………………………………………… 4-5, 7, 9-11, 14

28 U.S.C. 1915 (a).……………………………………………….......   13

28 U.S.C. 1930 (f).………………………………………………..   14

Fed. R. Bankr. P., Rule 1009…………………………………………..   10-11, 14

Fed. R. Bankr. P., Rule 4003…………………………………………..   10-11, 14

9 Collier on Bankruptcy, Section 4003.04 (15th Ed. Rev)………………   10

Ginsberg v. Granados, 963 A.2d 1134, 1139 (D.C. 2009)………………..   13

In Re Agee, 456 B.R. 740, 743 (M.D.N.C. 2011)…………………………..   11

In Re Arnold,
    252 B.R. 778, 781, 785, n. 10, and 787 (9th Cir. BAP 2000)……………   10

In Re Capitol Hill Group,
    313 B.R. 344, 348-349 (D.D.C. 2004)………………………………..   4

In Re Carter,
    182 F.3d 1027, 1029, n. 3 (9th Cir. 1999)………………………………   10

In Re Delaney, 819 A.2d 968, 999 (D.C. 2003)……………………………   13

In Re Fourier, 169 B.R. 282, 283-284 (D. Conn. 1994)……………………..   11

In Re Hope,
    231 B.R. 403, 412 (Bkrtcy. D.D.C. 1999)………………………………   12

In Re Jackson,
    593 F.3d 171, 177 (2nd Cir. 2010) ……………………………………… .   11

In Re Rodriguez Camacho,
    361 B.R. 294, 299 (1st Cir. BAP 2007)…………………………………   4

Matter of Doan,
    672 F.2d 831, 833 (11th Cir. 1982)………………………………….....   10

United States v. Kras, 409 U.S. 434, 440 (1973)……………………………   13

## Statement of Basis of Appellate Jurisdiction

This is an Appeal from the U. S. Bankruptcy Court, pursuant to 28 U.S.C. 158 (a)(1), of what the Bankruptcy Court viewed as a "final" order as to the discrete issue of the Exemption of property from the Debtor Estate under 11 U.S.C. 522.  To be "final," a Bankruptcy Court need not resolve all of the issues in the proceeding, but it "must finally dispose of all the issues pertaining to a discrete dispute within the larger proceeding." In Re Rodriguez Camacho, 361 B.R. 294, 299 (1st Cir. BAP 2007).  However, pending before the Bankruptcy Court are related Amended claims as to the Exemption of property from the Debtor Estate under 11 U.S.C. 522 (d).  Thus, this Appeal must be Remanded to the Bankruptcy Court as "non-Final," and to be consolidated with the Amended claims as to Exemption of property from the Debtor Estate under 11 U.S.C. 522 (d).

## Statement of the Issues Presented

(a) Whether the Orders of the Bankruptcy Court are not "Final," and thus this Appeal must be Remanded to be consolidated with related Amended claims as to the Exemption of property from the Debtor Estate under 11 U.S.C. 522 (d)?

(b) Whether the Bankruptcy Court must be directed to allow the Exemptions claimed by the Debtor in view of him having met all the statutory and legal requirements under 11 U.S.C. 522 (b)(3)(B)?

(c) Whether the Bankruptcy Court erroneously failed to make the Exemptions of property from the Debtor Estate Retroactive and Nunc Pro Tunc to the date of filing the Petition on May 14, 2009?

(d) Whether the Bankruptcy Court erroneously denied the Application for In Forma Pauperis status filed by the Debtor for waiver of the Appeal filing fee?

## Statement of Applicable Standard of Appellate Review

The required standard of review for questions of law in Bankruptcy appeals is de novo.  In Re Capitol Hill Group, 313 B.R. 344, 348-349 (D.D.C. 2004).  The Bankruptcy Court conducted no evidentiary hearing, and thus made no proper findings of fact.

Statement of the Case

1. This Appeal is limited to the issue of Exemptions of property from the Debtor Estate taken by the Debtor, Stephen Thomas Yelverton, under 11 U.S.C. 522 (b) and (d).

2. The Bankruptcy proceeding was commenced on May 14, 2009, under the provisions of Chapter 11, with the Debtor in possession of all property of the Debtor Estate. The case was involuntarily converted to Chapter 7 on August 20, 2010, and a Chapter 7 Trustee was appointed to take control of property of the Debtor Estate.

3. Debtor Yelverton filed an Amended Schedule C on July 26, 2012, to claim as Exempt from the Debtor Estate of property held by him and his spouse, Alexandra Senyi de Nagy-Unyom, as "Tenants by the Entireties" under the laws of the District of Columbia, as allowed by 11 U.S.C. 522 (b)(3)(B). See, Docket Entry No. 494.

4. The Chapter 7 Trustee filed on August 22, 2012, an Objection to the Debtor's Exemptions. See, Docket Entry No. 514.

5. Yelverton filed on August 30, 2012, a Supplemental Amended Schedule C to claim in the alternative a Federal Exemption under 11 U.S.C. 522 (d)(5) and (d)(11)(E). See, Docket Entry No. 519.

6. Yelverton filed on September 13, 2012, a Response to the Chapter 7 Trustee's Objections. See, Docket Entry No. 522.

7. The Chapter 7 Trustee filed on September 28, 2012, an Objection to the Debtor's Supplemental Schedule C. See, Docket Entry No. 531.

8. Yelverton filed on October 22, 2012, a Second Response to the Trustee's Objections. See, Docket Entry No. 548.

9. Yelverton filed on November 26, 2012, a Motion for Summary Judgment as to the claimed Exemptions. See, Docket Entry No. 556.

10. The Chapter 7 Trustee filed on December 7, 2012, a Motion for Summary Judgment as to his Objections to the Exemptions. See, Docket Entry No. 558.

11. The Chapter 7 Trustee filed on December 7, 2012, an Opposition to the Debtor's Motion for Summary Judgment. See, Docket Entry No. 559.

12. Yelverton filed on December 17, 2012, a Reply to the Trustee's Opposition to Motion for Summary Judgment. See, Docket Entry No. 562.

13. Yelverton filed on December 27, 2012, an Opposition to the Trustee's Motion for Summary Judgment. See, Docket Entry No. 563.

14. Yelverton filed on January 8, 2013, a Praecipe Re: Exemptions. See, Docket Entry No. 577.

15. Yelverton filed on January 14, 2013, a Motion for Leave to Submit Supplemental Matters and Citations Re: Exemptions. See, Docket Entry No. 584.

16. Yelverton filed on January 16, 2013, a Motion for Leave to Submit Affidavit as to the Production Contract with Maxwell Foods, Inc. See, Docket Entry No. 585.

17. Yelverton filed on January 25, 2013, a Motion for Leave to Submit Supplemental Citations Re: Hearing on Exemptions. See, Docket Entry No. 586.

18. The Bankruptcy Court ruled partially in favor of Yelverton's claimed Exemptions in Memorandum Decision Re: Cross Motions for Summary Judgment, and Order, entered January 30, 2013. See, Docket Entry Nos. 587-588.

19.  The Bankruptcy Court ruled in <u>Memorandum Decision and Order Re Debtor's</u> <u>Motions for Leave to Submit Supplemental Filings</u>, entered January 30, 2013, to accept the supplemental filings.  See, Docket Entry No. 590.

20.  Yelverton filed on February 4, 2013, an Amended claim for Exemption under 11 U.S.C. 522 (d)(5) and (d)(11)(E).  See, Docket Entry No. 594.

21.  Yelverton filed on February 13, 2013, a Motion to Alter or Amend the Decision on January 30, 2013, on the basis of clear error of law in not fully allowing the claimed Exemptions.  See, Docket Entry No. 595.

22.  The Bankruptcy Court ruled in <u>Memorandum Decision and Order Denying</u> <u>Motion to Alter or Amend Decision</u>, entered February 19, 2013.  See, Docket Entry No. 596.

23.  Yelverton timely filed his Notice of Appeal on March 5, 2013, and also filed an Application for In Forma Pauperis waiver of the Appeal filing fee.  See, Docket Entry Nos. 601 and 602.

24.  The Bankruptcy Court denied the fee waiver in <u>Memorandum Decision and</u> <u>Order Denying Debtor's Application to Proceed in District Court without Prepaying Fees</u> <u>or Costs</u>, and <u>Order</u>, entered March 15, 2013.  See, Docket Entries Nos. 604 and 605.

25.  Yelverton filed on March 27, 2013, a Motion to Vacate Decision per Rule 59 (e) on the basis of clear error of law.  See, Docket Entry No. 611.

26.  The Bankruptcy Court denied the Motion to Vacate in <u>Memorandum Decision</u> <u>and Order Denying Debtor's Motion to Vacate Order Denying Leave to Pursue Appeal In</u> <u>District Court without Prepaying Fees or Costs</u>, and <u>Order</u>, entered March 29, 2013.  See, Docket Entry Nos. 613 and 614.

7

27.  Yelverton filed on April 2, 2013, an Amended Notice of Appeal with respect to denial of the fee waiver.  See, Docket Entry No. 620.

28.  Yelverton filed on April 3, 2013, an Amended Designation of the Record on Appeal with respect to denial of the fee waiver.  See, Docket Entry No. 623.

Statement of the Facts

29.  The Bankruptcy Court conducted <u>no</u> evidentiary hearing as to the Exemptions, or any matters, and thus there is <u>no</u> Record evidence and <u>no</u> proper findings of fact.

30.  The Bankruptcy Court suggested that there is <u>no</u> "Tenants by the Entireties" property held by Yelverton and Ms. Senyi.  However, it took <u>no</u> evidence as to this matter, requested <u>no</u> briefing from the parties, made <u>no</u> factual or legal analysis, and simply rendered  wholly unsupported and conclusory speculation.

31.  The Chapter 7 Trustee filed on September 26, 2012, a Motion to Intervene in the Domestic Relations proceeding between Yelverton and Ms. Senyi in the D.C. Superior Court (Case No. 2008 DRB 3258) for the purpose of preventing a distribution of marital "Tenants by the Entireties" property to them, although such distribution to the spouses is required by D.C. Code, Section 16-910 (b).

32.  In his Motion to Intervene, the Chapter 7 Trustee accused Yelverton and Ms. Senyi of "fraud" against him by claiming marital property as "Tenants by the Entireties," and suggested criminal prosecution if they continued to pursue it.

33. Ms. Senyi is Pro Se and is a native of Austria with little understanding of American law.

34.  On October 1, 2012, Ms. Senyi filed a Motion to Dismiss wherein she "renounced" all marital "Tenants by the Entireties" property.  However, under District of

8

Columbia law, one spouse <u>cannot</u> unilaterally "renounce" marital "Tenants by the Entireties" property, and can only be done, if at all, with the <u>consent</u> of both spouses.

35. Yelverton filed on February 8, 2013, a Motion for Summary Judgment for the Superior Court to rule that the marital property of his and Ms. Senyi is "Tenants by the Entireties." The Chapter 7 Trustee and Ms. Senyi filed <u>no</u> opposition, and thus they <u>conceded</u> that this marital property is "Tenants by the Entireties." See, Addendum Ex. 1.

36. Yelverton filed on February 11, 2013, a Motion to Impose a Constructive Trust to rule that Ms. Senyi has an "equitable lien" in her favor as to certain marital property that is <u>superior</u> to claims by the Chapter 7 Trustee. The Chapter 7 Trustee and Ms. Senyi filed <u>no</u> opposition, and thus <u>conceded</u> that she has <u>superior</u> claims to the Trustee as to this marital property. See, Addendum Ex. 2. The Trustee presented <u>no</u> evidence of fraud.

37. The D.C. Superior Court in Case No. 2008 DRB 3258 made <u>no</u> ruling that the marital property of Yelverton is <u>not</u> "Tenants by the Entireties, and it declined to act upon Yelverton's Motions for Summary Judgment. He took an Appeal to the D.C. Court of Appeals on April 1, 2013, to mandate that the <u>unopposed</u> Motions for Summary Judgment be granted, and that the "Tenants by the Entireties" property be properly distributed, as required by D.C. Code, Section 16-910 (b). This matter remains pending.

Arguments

(a) <u>The Orders as to the Exemptions are not Final because all related Claims<br>as to Exemptions have not been Resolved</u>

38. Before the Bankruptcy Court is an Amended claim for Exemption of property under 11 U.S.C. 522 (d), filed February 4, 2013. Thus, this Appeal must be Remanded as "non-Final," and consolidated with this Amended claim for Exemption to prevent "piecemeal" litigation. Yelverton only filed this Appeal to avoid the risk of Res Judicata.

9

**(b)** The Bankruptcy Court Must be Directed to allow the Exemptions claimed by the Debtor in view of him meeting the statutory and legal requirements under 11 U.S.C. 522 (b)(3)(B)

39.   Under established Bankruptcy law, a claim of Exemption of property from the Debtor Estate under 11 U.S.C. 522 (b) and (d) can be made at anytime during the Bankruptcy, pursuant to Fed. R. Bankr. P., Rules 1009 and 4003, and is "presumptively valid" and will be "liberally allowed." In Re Carter, 182 F.3d 1027, 1029, n. 3 (9th Cir. 1999), citing to 9 Collier on Bankruptcy, Section 4003.04 (15th Ed. Rev.). See also, Matter of Doan, 672 F2d. 831, 833 (11th Cir. 1982).

40.   A claim of Exemption can only be denied on the basis of a showing of "bad faith" by the Debtor in claiming the Exemption, or a showing of "prejudice" to Creditors, which must be established by "clear and convincing" evidence, with the burden of proof on the Chapter 7 Trustee. Prejudice against a Creditor must be "actual economic loss" to the Creditor caused by the Exemption, and not "some theoretical disappointment of expectations." In Re Arnold, 252 B.R. 778, 781, 785, n. 10, and 787 (9th Cir. BAP 2000).

41.   In his Objections to the Exemptions claimed by Yelverton, the Chapter 7 Trustee presented no evidence whatsoever of any "bad faith" by Yelverton in claiming the Exemptions, and presented no evidence whatsoever of any "prejudice" to Creditors. The Trustee moreover declined to pursue an evidentiary hearing to prove his Objections against the claims of Exemptions by Yelverton.

42.   In the Memorandum Decision and Order, entered March 29, 2013, at pp. 3 and 5, the Bankruptcy Court acknowledged its decision in partially denying the Exemptions "did not rest upon any 'bad faith' by the Debtor," and was not based upon "prejudice," which is the only basis upon which a claim of Exemption can be denied.

43. Rather, the Exemptions were partially denied solely because an "allowance of the ... Exemptions would have diminished the Estate property available to pay the claims." Memorandum Decision and Order, entered March 29, 2013, id., at p. 3.

44. However, under established Bankruptcy law, a claim of Exemption may not be denied simply because an Exemption if allowed would result in property being removed from the Debtor Estate, and thus theoretically not available to pay Creditors, and that "prejudice" to Creditors does not occur simply because an Exemption is claimed after Assets have come into the Trustee's control, but before any distributions are made to Creditors. In Re Agee, 456 B.R. 740, 743 (Bkrtcy. M.D.N.C. 2011); In Re Fournier, 169 B.R. 282, 283-284 (Bkrtcy. D. Conn. 1994).

45. Thus, with the Bankruptcy Court explicitly acknowledging that it did not fully allow the claimed Exemptions simply because it would reduce the amount of the property in the Debtor Estate that would be theoretically available to pay Creditors, the rulings must therefore be Vacated as contrary to established Bankruptcy law, and the Appeal must be Remanded with directions for the Bankruptcy Court to fully allow the claimed Exemptions in accordance with the requirements of 11 U.S.C. 522 (b)(3)(B) and applicable Bankruptcy law under Fed. R. Bankr P., Rules 1009 and 4003.

46. The statutory purpose of a Debtor being allowed to Exempt property from the Debtor Estate under 11 U.S.C. 522 (b) or (d) at anytime during the Bankruptcy is to provide a source of funds for the Debtor to have a "fresh start" after Bankruptcy. In Re Jackson, 593 F.3d 171, 177 (2nd Cir. 2010). The assets that were Exempted by Yelverton include "Tenants by the Entireties" marital property that he needs to be able to make required domestic support payments of $400,000, plus $17,000 per month.

47. The Chapter 7 Trustee has made <u>no</u> showing that any Creditors have been or would be paid from any property in the Debtor Estate, and has indicated that this property of the Debtor Estate would <u>only</u> be used to pay his legal and administrative fees.

48. The spouse of Yelverton is a Creditor of the Debtor Estate for at least $400,000, plus $17,000 per month, and the Chapter 7 Trustee is <u>refusing</u> to pay her from Estate property under the Trustee's control.

49. Thus, allowing the Exemption to Yelverton would provide for Creditors to be paid by him, where the Chapter 7 Trustee is <u>refusing</u> to pay any Creditors from property of the Debtor Estate under the Trustee's control.

(c) <u>The Exemption of property from the Debtor Estate is Retroactive and Nunc Pro Tunc to the Date of the Petition for Bankruptcy on May 14, 2009</u>

50. Under established Bankruptcy law, an Exemption of property from the Debtor Estate, whenever taken, is retroactive and <u>nunc pro tunc</u> to the date of filing the Petition for Bankruptcy. <u>In Re Hope</u>, 231 B.R. 403, 412 (Bkrtcy. D.D.C. 1999).

51. Yelverton filed his Petition for Bankruptcy on May 14, 2009. Thus, the Exempted property would be put under his control as of that date, and would <u>not</u> be under control of the Chapter 7 Trustee at any time thereafter, and therefore could <u>not</u> be included as property within the Trustee's Settlement, dated March 2012, nor could the Exempted property be payable by the Trustee to Yelverton as only cash proceeds from that Settlement. The Exemption would <u>remove</u> the property from the Settlement.

52. Yelverton would be, as of May 14, 2009, the full owner of the Exempted property as a whole at whatever the asset value would be, and <u>not</u> just the cash liquidated value as determined by the Chapter 7 Trustee, who would have <u>no</u> role whatsoever with respect to the Exempted property as of May 14, 2009, and at <u>no</u> time thereafter.

### (d) The Bankruptcy Court Erroneously Denied the Application for In Forma Pauperis status filed by the Debtor for Waiver of the Appeal filing fee

53. In <u>Memorandum Decision and Order</u>, entered March 15, 2013, the Bankruptcy Court erroneously denied the Debtor's application for In Forma Pauperis status for waiver of the Appeal filing fee. It improperly relied upon 28 U.S.C. 1915 (a).

54. The provisions of 28 U.S.C. 1915 (a) may <u>not</u> be used in Bankruptcy cases. <u>United States v. Kras</u>, 409 U.S. 434, 440 (1973). Nor does the Bankruptcy Court have jurisdiction to act on an Appeal fee waiver request, which lies with the District Court.

55. The Bankruptcy Court <u>failed</u> to properly render a decision under 28 U.S.C. 1930 (f) based <u>only</u> upon the financial circumstances of the Debtor, where the Chapter 7 Trustee has taken all of Yelverton's assets of any value and <u>refuses</u> to allow any Exemption for these assets, and thus he has had to rely on loans to pay filing fees.

56. The assertion of the Bankruptcy Court that the Appeal is somehow "frivolous" is <u>not</u> based on any factual or legal analysis whatsoever. <u>In Re Delaney</u>, 819 A.2d 968, 999 (D.C. 2003), requires that to be determined "frivolous" the pleading must have <u>no</u> facts and <u>no</u> law in support, which must be demonstrated by the Court with factual and legal analysis, and <u>not</u> render cursory speculation in only <u>disagreeing</u> with the pleading.

57. In view of the Bankruptcy Court partially allowing the Exemptions claimed by Yelverton, and then acknowledging that the Chapter 7 Trustee had <u>failed</u> to present any evidence of "bad faith" by Yelverton in claiming the Exemptions and that the Trustee had <u>failed</u> to present any evidence of "prejudice" to Creditors in claiming the Exemptions, this Appeal by Yelverton is meritorious as a matter of law. <u>Ginsberg v. Granados</u>, 963 A.2d 1134, 1139 (D.C. 2009), assertions of claims are <u>not</u> "frivolous," where they have <u>some</u> factual and legal support and are colorable.

58. It is the Chapter 7 Trustee, who filed wholly "frivolous" Objections to Yelverton's claims for Exemption, and where he knew his Objections had <u>no</u> factual or legal basis, and were filed for the <u>sole</u> purpose to delay Yelverton's "fresh start."

Summary

.      59. The Bankruptcy Court acknowledged that the Chapter 7 Trustee <u>failed</u> to meet his burden of proof to disallow the claimed Exemptions of property from the Debtor Estate made by Yelverton. The statutory and legal requirements for Exemption under 11 U.S.C. 522 (b)(3)(B) have been fully met by Yelverton. This Exemption is necessary for Yelverton to have a "fresh start" after Bankruptcy, which is the statutory purpose for Exemptions, and where the Exemption of "Tenants by the Entireties" marital property is needed in order for Yelverton to pay domestic support and Creditor claims to his spouse of at least $400,000, plus $17,000 per month, and where the Chapter 7 Trustee is <u>refusing</u> to pay any Creditors from property of the Debtor Estate under his control.

Conclusions

WHEREFORE, this Appeal must be Remanded to the Bankruptcy Court and it directed to comply with 11 U.S.C. 522 (b)(3)(B), and Fed R. Bankr P., Rules 1009 and 4003, to allow in full the claimed Exemptions for "Tenants by the Entireties" property, and that the filing fee for this Appeal be waived in accordance with 28 U.S.C. 1930 (f).

This the 19th day of April, 2013.

Respectfully submitted,

Stephen Thomas Yelverton, Esq., Pro Se, D.C. Bar No. 264044
601 Pennsylvania Ave, N.W., Suite 900 South
Washington, D.C. 20004
Tel. 202-702-6708  Fax 202-403-3801
styelverton@yelvertonlaw.com

14

<u>CERTIFICATE OF SERVICE</u>

I, Stephen Thomas Yelverton, Esq., Pro Se, hereby certify that a copy of this Appellant Brief and Addendum were served the 19th day of April, 2013, by e-mail or U.S Mail, First Class, postage prepaid, to the following:

Wendell W. Webster, Esq., Chapter 7 Trustee
Linda M. Correia, Esq.
Webster, Frederickson
1775 K St., NW, Suite 600
Washington, DC 20006

Joseph A. Guzinski, Esq.
Office of U.S. Trustee
115 South Union St., Suite 210
Alexandria, VA 22314

Alexandra Senyi de Nagy-Unyom, Pro Se, Creditor
Bergenheidengasse 8-1-16
1130 Vienna, Austria

Richard J. Rodgers, Esq.
600 Baltimore Ave., Suite 202
Towson, MD 21204
Counsel for Creditor Sedghi Investment Properties, LLP

Michael R. Murphey, Esq.
1320 Nineteenth St., N.W., Suite 202
Washington, DC 20036
Counsel for Creditor Melody H. Fennel

Stephen Thomas Yelverton, Esq., Pro Se

## ADDENDUM

Supplemental Motion for Summary Judgment,
filed February 8, 2013……………………………………………….. Exhibit 1

Motion to Impose Constructive Trust,
filed February 11, 2013…………………………………………… Exhibit 2

Reproduction of Relevant Statutes and Rules

11 U.S.C. 522………………………………………………….. Exhibit 3

28 U.S.C. 1930………………………………………………… Exhibit 4

Fed. R. Bankr. P., Rule 1009…………………………………….. Exhibit 5

Fed. R. Bankr. P., Rule 4003……………………………………... Exhibit 6

EXHIBIT 1

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Domestic Relations Branch

| | |
|---|---|
| Alexandra N. Senyi de Nagy-Unyom )<br>)<br>    Plaintiff )<br>)<br>    v. )<br>)<br>)<br>Stephen Thomas Yelverton )<br>)<br>    Defendant ) | 2008 DRB 003258<br><br>Judge Alfred S. Irving, Jr. |

## SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT

COMES NOW Defendant Stephen Thomas Yelverton, Pro Se, pursuant to SCR-Dom, Rule 56, and hereby submits this Supplemental Motion for Summary Judgment of undisputed facts as to marital property held as tenants by the entireties with respect to equitable distribution of this property, pursuant to D.C. Code, Section 16-910 (b), and as to the matters raised by the Chapter 7 Trustee in his Motion to Intervene.   This Supplemental Motion for Summary Judgment is being submitted as a result of the Joint Pre-Trial Statement by the Trustee, filed January 11, 2013, not presenting any facts or law to support his claims, or to dispute the claims of Yelverton. It supplants the Motion for Summary Judgment, which Yelverton filed on October 22, 2012, and which was unopposed by Ms. Senyi and by the Chapter 7 Trustee.   That Motion for Summary Judgment was as to limited matters, and is re-stated herein for the convenience of the Court and to allow the other parties another opportunity to submit a response.   With finality of the Summary Judgment, as requested herein, Yelverton would agree to waive or dismiss his Compulsory Counter-Claims against Ms. Senyi along with any other claims that he may have against her, in order to bring this proceeding to closure.

1

<u>Statement of Facts which Cannot be Reasonably Disputed</u>

1. On September 29, 2006, Yelverton and Ms. Senyi entered into a Pre-Marital Agreement, and were married on September 30, 2006. Their Pre-Marital Agreement required Yelverton to fund a $500,000 investment account for Ms. Senyi by October 31, 2006; required Yelverton to give equity to Ms. Senyi in the marital home in the amount of $250,000; and required Yelverton to give to Ms. Senyi a Mercedes-Benz 350 SLK convertible roadster. The assets and funding by Yelverton would be coming from his separate property from prior to the marriage. Ex. 1.

2. In October 2006, Yelverton gave to Ms. Senyi his 1,333.3 shares of stock in Yelverton Farms, Ltd., in order to fund the required $500,000 investment account. The transfer of this stock was <u>not</u> recorded in the corporate ledger book because the officers and majority owners of the corporation were opposed to Ms. Senyi owning any of the stock. Yelverton thus retained legal title to the stock. Ex. 2.

3. On June 4, 2007, Yelverton by a publicly recorded Deed conveyed to himself and to Ms. Senyi a Joint Tenancy by the Entireties with the Right of Survivorship in 289 acres of land in Wayne County, North Carolina. Before the marriage, Yelverton had owned this land separately in Fee Simple. He made this conveyance to comply with their Pre-Marital Agreement to give Ms. Senyi $500,000 for an investment account. Ex. 3.

4. In October 2006, Yelverton gave Ms. Senyi the amount of $250,000 in equity in the marital home to comply with their Pre-Marital Agreement. Ex. 2.

5. On April 2, 2008, Yelverton executed a Promissory Note to Ms. Senyi, whereby she would be paid the first $100,000, from sale of the 1,333.3 shares of stock in Yelverton Farms, Ltd. Ex. 4. Such sale of the stock did <u>not</u> occur.

6. On October 27, 2008, Yelverton and Ms. Senyi executed a Separation Agreement, whereby their financial and property claims would be reserved. Ms. Senyi instituted this Domestic Relations proceeding for divorce on October 28, 2008.

7. On February 26, 2009, Yelverton timely filed his Compulsory Counter-Claims, for Award of Pendente Lite Relief for him, for Award of Alimony and Support for him, for Equitable Distribution of property to him, for modification of the Pre-Marital Agreement, and for Award of Damages to him for state law Tort claims.

8. On May 14, 2009, Yelverton filed for Chapter 11 Reorganization Bankruptcy in Case No. 09-00414. This Domestic Relations proceeding then became subject to the Automatic Stay under 11 U.S.C. 362.

9. On July 29, 2009, Yelverton commenced a civil action against his siblings, Phyllis Edmundson and Deborah Marm in the U.S. District Court for the Eastern District of North Carolina in Case No. 5:09-cv-331. These claims and causes of action arose in 2007 during the marriage with Ms. Senyi.

10. Causes of Action Nos. 1 and 3 are for liquidation at "fair value" of the 1,333.3 shares of stock in Yelverton Farms, Ltd. Compensatory damages of at least $500,000 are demanded for the value of the stock.

11. Cause of Action No. 5 is against Edmundson for tortuous interference in June 2007 with the public auction of 289 acres of land, at the time when it was owned by Yelverton and Ms. Senyi as tenants by the entirety. Compensatory Damages of at least $900,000 are Demanded, along with Treble or Punitive Damages of $2.7 Million.

12. On September 2, 2009, Ms. Senyi filed Creditor claims in the Bankruptcy court of $649,600 against Yelverton, as unpaid under their Pre-Marital Agreement.

13.   On December 4, 2009, Yelverton commenced Adversary Proceeding No. 09-10048 in the Bankruptcy Court against Ms. Senyi for state law Tort claims that had been raised in his Compulsory Counter-Claims on February 26, 2009.

14.   In Order, entered December 30, 2009, and Decision, entered February 4, 2010, at pp. 4-5, the Bankruptcy Court determined that it would Abstain from the Domestic Relations proceeding to Remand to the D.C. Superior Court to make determinations of equitable distribution of property between the spouses under D.C. Code, Section 16-910 (b), because the Superior Court has "more experience in this matter and better suited for the task," and for it to finally adjudicate their marital property rights.

15.   The Automatic Stay was not lifted to permit the enforcement of any [financial] Judgment that is recovered by Ms. Senyi, which can only be done on Remand to the Bankruptcy Court for its approval. Exs. 5-6.

16.   In Decision, at pp. 6-7, entered February 4, 2010, the Bankruptcy Court further Stayed the Adversary Proceeding in No. 09-10048 pending the conclusion of this Domestic Relations proceeding in the Superior Court, and Stayed the adjudication of Creditor Senyi's claims of $649,600, against Yelverton pending the conclusion of this Domestic Relations proceeding in the Superior Court.

17.   Yelverton commenced Adversary Proceedings Nos. 10-10001, 10-10003, 10-10004, 10-10045, and 11-10001 before the Bankruptcy Court to recover over $4 Million dollars in Tort claims against Defendants, which included his siblings, who had defrauded him, tortuously interfered with his business relations, and otherwise tortuously took actions that caused his Bankruptcy. All these claims arose in 2007-2009 during the marriage with Ms. Senyi.

4

18. A trial in this Domestic Relations proceeding was conducted by Judge Carol Ann Dalton on June 23, 2010, but only as to the validity of the Pre-Marital Agreement between the parties. No other claims and issues were presented and litigated, including the Compulsory Counter-Claims of Yelverton and equitable distribution of property.

19. In the Judgment, entered August 11, 2010, the Pre-Marital Agreement was ruled to be valid, and Yelverton obligated to pay $17,000, per month to Ms. Senyi under the terms of that agreement, as a "private" contract. There was no court ordered alimony or support awarded and no court ordered equitable distribution of property awarded.

20. The Domestic Relations Court failed to Remand the Judgment to the Bankruptcy Court for enforcement, or to acknowledge that this proceeding was still subject to the Automatic Stay for enforcement, as was required by the Bankruptcy Court.

21. After conversion of Yelverton's Bankruptcy case to Chapter 7, Ms. Senyi re-submitted her Creditor claims against him on October 18, 2010, and reduced the amount to $612,600.

22. On June 20, 2011, Yelverton formally notified the Chapter 7 Trustee by a pleading that the property and litigation claims that the Trustee was proposing to Settle with the Defendants, Edmundson and Marm, in Case No. 5:09-cv-331, was entireties property by operation of state law, and thus under Bankruptcy law was not subject to the Trustee's control and authority to Settle.

23. On October 7, 2011, the Chapter 7 Trustee filed with the Bankruptcy Court a "Notice of Intent to Abandon Debtor's [state law] Claims against Former Spouse," wherein Yelverton would have the right to pursue state law claims with respect to Ms. Senyi in the D.C. Superior Court, with no interference from the Trustee.

24.   In <u>Order</u>, entered December 15, 2011, the Bankruptcy Court dismissed <u>without</u> prejudice the state law claims of Yelverton with respect to Ms. Senyi in Adversary Proceeding No. 09-10048, which had been <u>Abandoned</u> by the Chapter 7 Trustee, for Yelverton to pursue these claims before the Superior Court "because they <u>no</u> longer have any impact on the administration of the Bankruptcy Estate." Ex. 7.

25.   On May 4, 2012, the Chapter 7 Trustee <u>first</u> disclosed a Settlement with the Defendants in Case No. 5:09-cv-331, who are Edmundson and Marm.  Under its terms, all the litigation claims of Yelverton against his siblings, Edmundson and Marm, of over $3 Million would be dismissed with prejudice, and the Trustee would convey to them Yelverton's 1,333.3 shares of stock in Yelverton Farms, Ltd., which is valued by Yelverton at $500,000.  All financial benefits of the Settlement would inure to the benefit of Yelverton's siblings, who are <u>not</u> Creditors of the Debtor Estate.

26.   Under the terms of this Settlement with the Chapter 7 Trustee, Yelverton's siblings would pay to the Trustee the total amount of $110,000. This amount would only be enough for the legal fees and administrative costs of the Trustee, with <u>nothing</u> left to pay any Creditor claims, which include those of Ms. Senyi for some $700,000.   There would be <u>no</u> Creditors paid under the Settlement.

27.   Under the terms of this Settlement with the Chapter 7 Trustee, Yelverton would be stripped of all his property rights and litigation claims in North Carolina in the amount of over $3 Million, with <u>nothing</u> left to pay Ms. Senyi under their Pre-Marital Agreement, and with <u>nothing</u> left to re-build his law practice in order to pay her.

28. In Order, entered May 8, 2012, the Bankruptcy Court reaffirmed that Yelverton's pursuit of state law claims with respect to Ms. Senyi in the Superior Court would have "no impact on the administration of the Bankruptcy Estate." Ex. 8.

29. On June 4, 2012, the D.C. Court of Appeals Remanded this proceeding to the Superior Court resolve the Compulsory Counter-Claims of Yelverton, to make an equitable distribution of entireties property under D.C. Code, Section 16-910 (b), and to make a final resolution of all financial claims between Yelverton and Ms. Senyi.

30. Prior to the Hearing before the Bankruptcy Court held on June 18, 2012, for approval of the Settlement, the Trustee was again informed by Yelverton that the property to be included by the Trustee in the Settlement was entireties property, in which Ms. Senyi had a legal and equitable interest, and thus was not subject to control by the Trustee under Bankruptcy law as property of the Debtor Estate.

31. The approval of the Settlement between the Chapter 7 Trustee and Yelverton's siblings is not final and remains pending, and they have represented that it will not be consummated until all related litigation is final.   This includes pending litigation before the U.S. Bankruptcy Court, the U.S. District Court for D.C., and the U.S. Court of Appeals for the D.C. Circuit, and for the Fourth Circuit.

32. In Decision, entered August 8, 2012, at p. 16, the Bankruptcy Court reaffirmed that it was deferring to the Superior Court to determine marital property.  Ex. 8.

33. On July 26 and August 30, 2012, and February 4, 2013, Yelverton claimed under 11 U.S.C. 522 of the Bankruptcy Code an Exemption from the Debtor Estate and from control of the Chapter 7 Trustee of the entireties property included within the Settlement. The objections of the Trustee to the Exemption remain pending and not final.

Applicable Law

Law as to Summary Judgment

34.    Under SCR, Rule 56, Summary Judgment is appropriate where there is <u>no</u> dispute as to a genuine issue of material fact.    After the moving party has made this initial showing, the burden then shifts to the non-moving party to "prove that a genuine issue of material fact does exist."    In order to survive a motion for Summary Judgment, the non-moving party must present "more than mere conclusory allegations or denials." <u>Chang v. Institute for Public-Private</u>, 846 A.2d 318, 323-324 (D.C. 2004).

Law as to Tenants by the Entireties

35.  Under the Common Law, a husband and wife could <u>only</u> hold property as Tenants by the Entireties because "they were but one person." <u>Daniel v. Wright</u>, 352 F.Supp. 1, 4 (D.D.C. 1972); <u>Coleman v. Jackson</u>, 286 F.2d 98, 99 (D.C Cir. 1960).

36.  The Doctrine of Tenancy by the Entireties has long been established under the laws of the District of Columbia, and rests on "the Common Law concept of husband and wife as a single indivisible unit." <u>Clark v. Clark</u>, 644 A.2d 449, 450 (D.C. App. 1994).

37.  There need <u>not</u> be formal legal title as Tenants by the Entireties to find that the property is owned in this manner, and interspousal gifts may be held in this manner. <u>Hemily v. Hemily</u>, 403 A.2d 1138, 1142-1143, and n. 5 (D.C. App. 1979).

38.    There is a "presumption" that property held jointly by the spouses is as Tenants by the Entireties. <u>Roberts & Lloyd, Inc. v. Zyblut</u>, 691 A.2d 635, 639 (D.C. App. 1997). This presumption that all property jointly held by married persons is held as Tenants by the Entireties applies <u>not</u> only to property conveyed them, but to all property actually held by them. <u>In Re Chreky</u>, 450 B.R. 247, 253, n. 2 (D.D.C. 2011).

39.  Under the Common Law, establishing one spouse's intent to make a gift to the other spouse would be enough to create a Tenancy by the Entireties. General Motors Acceptance Corp. v. Lefevre, 38 B.R. 980, 982-983, and n. 1 (D.Vt. 1983).

40.  In the District of Columbia, there is a "presumption of a gift arising from the relationship of the parties." Hardy v. Hardy, 250 F.Supp. 956, 961 (D.D.C. 1966).

41.  There must be "donative" intent by one spouse for a transfer of property to the other to be joint tenants, and thereby a presumption of a Tenancy by the Entireties. Zyblut, id., at 640, and Chreky, id., at 254.    Such intent can be evidenced by acts or words. Zoob v. Jordan, 841 A.2d 761, 766 (D.C. 2004).

42.  Both personal and real property can be held by married persons as Tenants by the Entireties. Held v. McNett, 154 A.2d 349, 350 (D.C. App. 1959).

43.  An estate in property held as Tenants by the Entireties "continues automatically in its derivatives on disposition," whether it be realty or personalty.   In Re Estate of Wall, 440 F.2d 215, 220 (D.C. Cir. 1971).

44.  The classification of a cause of action as separate or marital property does not hinge on whether the spouses are joint plaintiffs, but on whether the claim arose during the marriage as a personal injury to one spouse or as "accumulated" property during the marriage, and thus falls outside the statutory definition of separate property, and in such case the entire inchoate claim is Entireties property.   Boyce v. Boyce, 541 A.2d 614, 617-618, 620, and n. 8 (D.C. App. 1988).

45.  Under the Common Law and D.C. law, all Tort claims include an element of personal injury in the form of mental or emotional distress based on the Tort being committed. District of Columbia v. Gandy, 450 A.2d 896, 901 (D.C. App. 1981).

46. Where property is held as Tenants by the Entireties, a legal action may be brought in the name of either spouse, and a judgment for one inures equally to the other. Wynn v. Washington, 53 A.2d 275, 276 (D.C. App. 1947); Sandler v. Wertlieb, 60 A.2d 222, 223 (D.C. App. 1948).

47. Tenants by the Entireties are in "privity" as to legal claims by the other spouse. David v. Nemerofsky, 41 A.2d 838, 840 (D.C. App. 1945).

48. A Bankruptcy Trustee can reach Entireties property only to the extent that a Creditor could under state law, where the property is not "immune from process" for claims against only one spouse. In Re McNeilly, 249 B.R. 576, 584 (1st Cir. BAP 2000).

49. Under the laws of the District of Columbia, the rights of each spouse in Entireties property are superior to the rights of persons whom claim through the other spouse, and includes a protection against Creditors of the other from attachment or levy under judicial process. Fairclaw v. Forrest, 130 F.2d 829, 833-834 (D.C. Cir. 1942).

50. There can be execution on property held as Tenants by the Entireties only for joint debts of the spouses. Finley v. Thomas, 691 A.2d 1163, 1164 (D.C App. 1997).

51. Neither of the tenants by the Entireties may perform any act which would prejudicially affect the other as to the subject Entireties property, or to partition the property before a divorce. Deschenes v. McFerren, 125 A.2d 386, 387 (D.C. App. 1956).

52. Under the laws of the District of Columbia, a legal separation does not dissolve or terminate a Tenancy by the Entireties, nor does the filing of separate tax returns. In Re Estate of Wall, 440 F.2d, supra, at 221.

Law as to Equitable Liens

53.   Under the Common Law, "equitable liens" are recognized as to contracts where there is a distinct identification of property in which the creditor is to be paid, and with notice, this "equitable lien" takes priority over the rights of others as to the property, which arise subsequently.   Continental Casualty Co. v. Kelly, 106 F.2d 841, 843 (D.C. Cir. 1939); In Re Aumiller, 168 B.R. 811, 815-817 (Bkrtcy. D.D.C. 1994).

54.   An "equitable lien" takes priority over the claims of a Bankruptcy Trustee who has notice of the equitable lien or claim as to the identified property.   In Re Aumiller, id., at 818-819; In Re Hope, 231 B.R. 403, 423-426 (Bkrtcy. D.D.C. 1999).

55. A purchaser is held to be on "inquiry notice" where he or she is aware of circumstances which generate enough uncertainty about the state of title to the property that a person of ordinary prudence would inquire further about the circumstances, and is "equivalent to knowledge direct and certain." Clay Properties v. Washington Post, 604 A.2d 890, 895 (D.C. App. 1992).

56.   Under the laws of the District of Columbia, a person can be a bona fide purchaser of property for valuable consideration, only if such consideration is actually paid before the purchaser learns of the prior unrecorded lien or claim against the property. In Re Technical Land, Inc., 172 B.R. 429, 436 (Bkrtcy. D.D.C. 1994).

Law as to Equitable Distributions under D.C. Code, Section 16-910 (b)

57. Under D.C. Code, Section 16-910 (b), any "property 'accumulated' during the marriage is Entireties property, and such 'accumulated' property need not be derived from one's own gainful efforts, but may be obtained fortuitously, or simply allowed to pile up." Boyce v. Boyce, 541 A.2d, supra, at 620.

58. A spouse has the legal right during the marriage to convey his separately owned property to himself and the other spouse to be Tenants by the Entireties property. Burwell v. Burwell, 700 A.2d 219, 224, n. 7 (D.C. 1997).

59. A valid pre-marital agreement can create an Entireties interest in a spouse who does not formally hold title. Brice v. Brice, 411 A.2d 340, 343 (D.C. App. 1980).

60. Whenever property is put in joint names -- for whatever reason-- then it is no longer "sole and separate" property under Section 16-910 (a), but rather is within sub-section (b) for equitable distribution. Turpin v. Turpin, 403 A.2d 1144, 1146 (D.C. 1979).

61. Where property is jointly owned, jointly lived in, or there is joint exercise of dominion and control, then it is to equitably distributed under Section 16-910 (b). Turpin, id., at 1147.

62. The interest of the husband in property held as Tenants by the Entireties can be awarded to the wife as compensation for the husband's failure to fulfill his support obligations. Travis v. Benson, 360 A.2d 506, 510 (D.C. App. 1976).

63. An equitable distribution of property to one spouse may be supported by "faithful performance" of the marriage vows, and a financial contribution is not required. Hipp v. Hipp, 181 F.Supp. 299, 301-302 (D.D.C. 1960).

64. The spouses may agree to preserve the incidents of Tenancy by the Entireties after their divorce to provide for a sheltered source of support for a spouse without risk of attachment by a Creditor of the other. Finley v. Thomas, 691 A.2d, supra, at 1166, n. 4.

65. Under the laws of the District of Columbia, a property settlement is sufficient to preserve the incidents of the Tenancy by the Entireties after the divorce. Benson v. United States, 442 F.2d 1221, 1225 (D.C. Cir. 1971).

66.  Under the <u>Restatement (Conflict of Laws)</u>, Ed. 1934,  Section 51, Comment b, jurisdiction over the owner of an intangible thing or a chose in action, such as a litigation cause of action, will enable a state to affect the intangible thing as it desires to do.

67.  Jurisdiction over a chose in action is where the parties are present, and <u>not</u> the location of the related property. <u>Densby v Acacia</u>, 78 F.2d 203, 204 (D.C. Cir. 1935).

68.  Under D.C. Code, Section 28:9-305 (c)(1), a creditor must file in the District of Columbia a U.C.C. lien on investment stock owned by a D.C. resident, even if the stock certificate is located in another state or issued by an out-of-state corporation.

69.  Under D.C. Code, Section 11-1101 (8), the Superior Court must adjudicate in a divorce action the rights of the spouses in Entireties property located outside the District of Columbia and may issue orders requiring the parties to make transfers implementing the court's ruling as to equitable distribution under Section 16-910 (b).  <u>Davis v. Davis</u>, 957 A.2d 576, 580 (D.C. 2008).

70.  Actions taken by one spouse to provide support to the other under a valid Pre-Marital Agreement, or in accordance with domestic support laws, are <u>not</u> "fraudulent" or taken in "bad faith" against a Bankruptcy Trustee, where there is "value" received by the transferor spouse under D.C. Code, Section 28-3103. <u>District-Realty Title Ins. v. Forman</u>, 518 A.2d 1004, 1007 (D.C. 1986); <u>In Re Hope</u>, 231 B.R., <u>supra</u>, at 417.

Arguments in Support of Summary Judgment

Stock in Yelverton Farms. Ltd.

71.  It is undisputed that Yelverton made a gift to Ms. Senyi in October 2006 of his 1.333.3 shares of stock in Yelverton Farms, Ltd., as was required by their Pre-Marital Agreement to fund a $500,000 investment account for her by October 31, 2006.

72. A gift of property from one spouse to the other during the marriage creates the presumption of a Tenancy by the Entireties, where there is "donative" intent, even if such title is not formally held by them, and such intent can be shown by the acts of the donor spouse. General Motors v. Lefevre, 38 B.R., supra, 982-983, and n. 1; Hardy v. Hardy, 250 F.Supp., supra, at 961; Roberts v. Zyblut, 691 A.2d, supra, at 639; In Re Chreky, 450 B.R., supra, at 253, n. 2; Hemily v. Hemily, 403 A.2d, supra, at 1142-1143, and n. 5; Brice v. Brice, 411 A.2d, supra, at 343; Zoob v. Jordan, 841 A.2d, supra, at 766.

73. Yelverton has a documented history of gifting to Ms. Senyi during the marriage his separate property to be held by them as Tenants by the Entireties. This is demonstrated by his gift by Deed, dated June 4, 2007, of 289 acres of land to be held by them as Tenants by the Entireties. Ex. 3.   Burwell v. Burwell, 700 A.2d, supra, at 224, n. 7, one spouse may convert his separate property into Entireties property by the act of conveyance to the other during the marriage. Turpin v. Turpin, 403 A.2d, supra, at 1146.

74. The Chapter 7 Trustee has presented no evidence whatsoever in his Joint Pre-Trial Statement which would rebut the presumption of a gift of the stock from Yelverton to Ms. Senyi during the marriage and the presumption that it is held as a Tenancy by the Entireties.

75. With the stock being held by Yelverton and Ms. Senyi as Tenants by the Entireties since October 2006, it could not legally be under the control of the Trustee to include in his Settlement. Under District of Columbia law, a Bankruptcy Trustee can only reach Entireties property to the extent that a Creditor of one spouse could, and here it is "immune" from judicial process by such Creditors. In Re McNeilly, 249 B.R., supra, at 584; Fairclaw v. Forrest, 130 F.2d, supra, at 833-834.

76.   In view of the Bankruptcy Court having <u>Abstained</u> from determining the marital property rights of Yelverton and Ms. Senyi, and deferring to the expertise of the Superior Court to make such determination, and the Chapter 7 Trustee having <u>Abandoned</u> to Yelverton all state law claims as to marital property rights for Yelverton to pursue in the Superior Court, there is <u>no</u> impediment for the Superior Court to act under District of Columbia law to make its own independent judgment, as ruled by the Bankruptcy Court in <u>Order</u>, entered December 30, 2009; <u>Decision</u>, entered February 4, 2010; <u>Order</u>, entered December 15, 2011; <u>Order</u>, entered May 8, 2012; and <u>Decision</u>, entered August 8, 2012.

77.   Accordingly, under both Bankruptcy law and District of Columbia law, the Chapter 7 Trustee has <u>no</u> legal or equitable rights to property held as Tenants by the Entireties, and where the Bankruptcy Court has <u>Abstained</u> in favor of the Superior Court and the Chapter 7 Trustee has <u>Abandoned</u> to Yelverton, and thus the 1,333.3 shares of stock in Yelverton Farms, Ltd., must therefore be equitably distributed to Yelverton and Ms. Senyi as Entireties property under D.C. Code, Section 16-910 (b).

78.   An "equitable lien" on the stock would moreover have been created in favor of Ms. Senyi under District of Columbia law. On April 2, 2008, Yelverton executed a Promissory Note to Ms. Senyi for her to be paid the first $100,000 from sale of the stock. Ex. 4. This sale did <u>not</u> occur.

79.   Where a contract identifies specific property of a debtor from which the creditor is to be paid, an "equitable lien" thus arises on the identified property in favor of the creditor, which here is Ms. Senyi. <u>Continental Casualty Co. v. Kelly</u>, 106 F.2d, <u>supra</u>, at 843; In <u>Re Aumiller</u>, 168 B.R., <u>supra</u>, at 815-817.

80. An "equitable lien" on property takes priority over and is superior to the claims of a Bankruptcy Trustee, who has notice of the lien or claim on the property. In Re Aumiller, id., at 818-819; In Re Hope, 231 B.R., supra, at 423-426.

81. The Chapter 7 Trustee has never asserted that he had no prior notice of the Promissory Note, dated April 2, 2008, and the resulting "equitable lien," and in fact has had actual notice of it since September 2010, when he became Trustee. Thus, he would at least have had "inquiry notice," which would defeat his claims to the stock to include in his Settlement. Clay Properties v. Washington Post, 604 A.2d, supra, at 895.

82. Edmundson and Marm could not be bona fide purchasers in the Settlement of the 1,333.3 shares of stock for valuable consideration, without notice of the prior unrecorded "equitable lien," because they have not consummated such purchase under the Settlement and have had actual prior notice of this "equitable lien" since at least 2010. In Re Technical Land, Inc., 172 B.R., supra, at 436.

83. Accordingly, with a Common Law "equitable lien" on the 1,333.3 shares of stock in favor of Ms. Senyi, which arose in April 2008, and where there is prior notice of the lien to the Chapter 7 Trustee and to Edmundson and Marm since at least September 2010, they would have no claims under District of Columbia law to the stock, and thereby the Trustee could not include it in his Settlement in order to transfer to Edmundson and Marm, the siblings of Yelverton, and to do so in derogation of the domestic support rights of Ms. Senyi. Thus, the stock must be equitably distributed to Yelverton and Ms. Senyi under D.C. Code, Section 16-910 (b), in order to provide for her domestic support. This would be required, even if the stock is not Entireties property.

North Carolina Litigation Claims

84. The North Carolina litigation claims of Yelverton in Case No. 5:09-cv-331 arose in 2007 during the marriage with Ms. Senyi. Thus, these claims are Tenants by the Entireties property, as being "accumulated" during the marriage. Boyce v. Boyce, 541 A.2d, supra, at 617-618, 620, and n. 8.

85. One of the causes of action arises out of a claim for tortuous interference by Edmundson with real estate that was held at the time in June 2007 by Yelverton and Ms. Senyi under a publicly recorded Deed as Tenants by the Entireties. Thus, the entire inchoate litigation claims are Entireties property. Boyce, id.

86. This cause of action is moreover Entireties property in view of an estate held as Tenants by the Entireties "continues automatically in its derivatives on disposition," whether it be realty or personalty. In Re Estate of Wall, 440 F.2d, supra, at 220.

87. Entireties are recognized in North Carolina in real estate. Combs v. Combs, 160 S.E.2d 308, 311 (N.C. 1968). A chose in action, such as a litigation claim, is an intangible subject to the laws of the state having jurisdiction over the holder, which here is D.C. Restatement (Conflict of Laws), supra, Section 51, Comment b; Densby v. Acacia, 78 F.2d, supra, at 204; see also, D.C. Code, Section 28:9-305 (c)(1), as to stock.

88. Accordingly, the litigation claims of Yelverton in North Carolina are subject to equitable distribution by the Superior Court to him and Ms. Senyi as Entireties property under D.C. Code, Section 11-1101 (8) and Section 16-910 (b). Davis v. Davis, 957 A.2d, supra, at 580. The fact that these litigation claims were filed only in the name of Yelverton has no detrimental bearing on them being Entireties property. Wynn v. Washington, 53 A.2d, supra, at 276; Sandler v. Wertlieb, 60 A.2d, supra, at 223.

Litigation Claims for 1804 Potomac Greens Dr.

89.   It is undisputed that during the marriage in October 2006 Yelverton gifted $250,000 in equity to Ms. Senyi in the marital home at 1804 Potomac Greens Dr., Alexandria, VA 22314.   This was required by their Pre-Marital Agreement.   The title remained in the name of Yelverton, who had acquired this property prior to the marriage.

90.   The Chapter 7 Trustee has <u>not</u> disputed this gift to Ms. Senyi during the marriage as being Entireties property.

91.   This property at 1804 Potomac Greens Dr. was foreclosed on in June 2008, which was during the marriage.   Yelverton instituted state law litigation claims against the mortgage lender in Adversary Proceeding No. 10-10001 before the Bankruptcy Court. These litigation claims would be Entireties property.   <u>Oliver v. Givens</u>, 129 S.E.2d 661, 663 (Va. 1963), marital real estate and its proceeds are Entireties property in Virginia.

92.   Accordingly, the state law litigation claims in Adversary Proceeding No. 10-10001, which remains pending, must be equitably distributed as Entireties property under D.C. Code, Section 11-1101 (8) and Section 16-910 (b), to Yelverton and Ms. Senyi.

Litigation Claims for Mercedes-Benz 350 SLK

93.   It is undisputed that Yelverton gifted to Ms. Senyi at the time of their marriage a Mercedes-Benz 350 SLK. This was required by their Pre-Marital Agreement. The title remained in the name of Yelverton, who had acquired it prior to their marriage.

94.   The Chapter 7 Trustee has <u>not</u> disputed this gift to Ms. Senyi at the time of the marriage on September 30, 2006, as being Entireties property.

95.   The District of Columbia impounded the Mercedes, which was titled in Virginia, and illegally sold it at auction in March 2009, during the time of the marriage.

18

96. Yelverton instituted state law litigation claims against the District of Columbia in Adversary Proceeding No. 10-10045 before the Bankruptcy Court. These litigation claims would be Entireties property. <u>Oliver v. Givens</u>, 129 S.E.2d, <u>supra</u>, at 663, entireties in Virginia include marital personal property.

97. Accordingly, these state law litigation claims in Adversary Proceeding No. 10-10001, which remain pending, must be equitably distributed as Entireties property under D.C. Code, Section 11-1101 (8) and Section 16-910 (b), to Yelverton and Ms. Senyi.

<u>Equitable Distribution of Marital Property</u>

98. On October 1, 2012, Ms. Senyi "renounced" any claim to marital Entireties property. She is Pro Se, a citizen and resident of a foreign nation, and has <u>no</u> training in Anglo-American Common Law, or in U.S. statutory law.

99. Accordingly, an independent counsel must be appointed to advise Ms. Senyi as to these marital Entireties property claims and their valuation. Otherwise, a Remand to Vacate would be required as to the "due process" rights of the parties being violated.

100. This "renunciation" by Ms. Senyi would have <u>no</u> adverse effect on the legal validity of the property being Entireties, or on Yelverton's claims to be distributed the property as Entireties. <u>Deschenes v. McFerren</u>, 125 A.2d, <u>supra</u>, at 387, neither of the tenants by the Entireties may perform any act which would prejudicially affect the other as to the subject Entireties property, or to partition the property before a divorce.

101. Yelverton elects for an equitable distribution of Entireties property to remain as Entireties after the divorce. <u>Finley v. Thomas</u>, 691 A.2d, <u>supra</u>, at 1166, n. 4. This would prevent Yelverton's siblings, Edmundson and Marm, from "poaching" on the property to thwart Ms. Senyi from having funding for domestic support.

19

102. The nature and scope of the property interests of a Debtor in Bankruptcy are determined by state law. Butner v. United States, 440 U.S. 48, 54-55 (1979).

103. The Chapter 7 Trustee has no "standing" and no legal right to oppose a distribution of Entireties property to Yelverton and Ms. Senyi under D.C. Code, Section 16-910 ((b). This is because actions by one spouse to provide support to the other under a valid pre-marital agreement, or in accordance with domestic support laws, are not "fraudulent" or taken in "bad faith" against a Bankruptcy Trustee, where there is "value" received by the transferor spouse under D.C. Code, Section 28-3103. District-Realty Title Ins. v. Forman, 518 A.2d, supra, at 1007; In Re Hope, 231 B.R., supra, at 417.

104. The "value" received by Yelverton from Ms. Senyi was the faithful performance of her marriage vows, which does not require any monetary consideration from her to be a "good faith," valid, and bona fide transfer against a Creditor or Bankruptcy Trustee. See, Hipp v. Hipp, 181 F.Supp., supra, at 301-302.

WHEREFORE, the Entireties property to be equitably distributed are stock with a Common Law "equitable lien," and choses of action in litigation, and are all under the jurisdiction of the D. C. Superior Court, as it having jurisdiction over the holders of these claims, Yelverton and Ms. Senyi, and thus a Grant of Summary Judgment is appropriate.

This the 8th day of February, 2013.

Respectfully submitted,

By: _____
Stephen Thomas Yelverton, Esq., Pro Se, D.C. Bar No. 26444
601 Pennsylvania Ave., N.W., Suite 900 South
Washington, DC 20004
Tel. 202-702-6708 Fax 202-403-3801
E-mail:

CERTIFICATE OF SERVICE

I, Stephen Thomas Yelverton, Esq., Pro Se, hereby certify that a copy of this "Supplemental Motion for Summary Judgment" was served the 8th day of February, 2013, by e-mail or U.S. Mail, first class, postage pre-paid on:

Alexandra Senyi de Nagy-Unyom, Pro Se
1260 Twenty First St., N.W., Suite 901
Washington, DC 20036
Appellee/Plaintiff

Wendell W. Webster, Esq., Chapter 7 Trustee
Natalie S. Walker, Esq.
1775 K St., N.W, Suite 600
Washington, D.C. 20006

                                        Stephen Thomas Yelverton, Esq.

EXHIBIT 2

THE SUPERIOR COURT FOR THE
THE DISTRICT OF COLUMBIA

Alexandra N. Senyi de Nagy-Unyom            )
          Plaintiff                            )
                                               )     Case No. 2008 DRB 003258
          v.                                   )
                                               )     Judge Alfred S. Irving, Jr.
Stephen Thomas Yelverton                    )
          Defendant                            )     Trial: March 12, 2013

## MOTION TO IMPOSE CONSTRUCTIVE TRUST ON PROPERTY HELD BY THE CHAPTER 7 TRUSTEE

COMES NOW, Defendant Stephen Thomas Yelverton, and hereby moves that the Superior Court impose a "constructive trust" on equitable property interests that are held by the Chapter 7 Trustee, and that this trust be for the benefit of the spousal parties herein, Plaintiff Senyi and Defendant Yelverton.   The Chapter 7 Trustee has voluntarily intervened in this domestic relations proceeding, and thereby has subjected himself to the jurisdiction of the Superior Court.  In support, the following is shown.

### Statement of Facts

1. On April 2, 2008, Yelverton agreed to and executed a Promissory Note to pay Ms. Senyi the first $100,000, from his sale of 1,333.3 shares of stock in Yelverton Farms, Ltd.  This was during the time of their marriage.  Ex. 1.  Such sale never occurred.

2. The Chapter 7 Trustee has been on notice of this Promissory Note since at least October 2010, when he became the Bankruptcy Trustee by appointment of the Office of United States Trustee, which is headquartered in Columbia, South Carolina. The Chapter 7 Trustee is supervised only by the United States Trustee, who is located in South Carolina, and must act independent of the U.S. Bankruptcy Court in D.C.

3. Ms. Senyi submitted this Promissory Note in her Proof of Claims to the Chapter 7 Trustee in October 2010, with respect to her Creditor claims against Yelverton.

4. On July 29, 2009, Yelverton had commenced before the U.S. District Court for the Eastern District of North Carolina, in Case No. 5:09-cv-331, a Complaint against the majority stockholders of Yelverton Farms, Ltd., who are his siblings, Phyllis Edmundson and Deborah Marm. Therein, Yelverton seeks in Cause of Action No. 1 to compel the payment of dividends or profits from the 1,333.3 shares of stock in Yelverton Farms, Ltd., issued and registered to Debtor Yelverton, or to redeem the 1,333.3 shares of stock for "fair value," as required by N.C. General Statutes 55-6-40 (h), (i), (j), and (k).

5. On December 4, 2009, Yelverton had commenced Adversary Proceeding No. 09-10048 in the Bankruptcy Court against Ms. Senyi for state law Tort claims that he had raised in his Compulsory-Counter-Claims on February 26, 2009, in this Domestic Relations proceeding.

6. In Order, entered December 30, 2009, and Decision, entered February 4, 2010, at pp. 4-5, the Bankruptcy Court ruled that it would Abstain from this Domestic Relations proceeding to Remand to the D.C. Superior Court to make determinations of equitable distributions of property between the spouses under D.C. Code, Section 16-910 (b), because the Superior Court has "more expertise in this matter and better suited for the task," and for it to finally adjudicate their marital property rights. Ex. 2 and 3.

7. In Decision, entered February 4, 2010, the Bankruptcy Court further Stayed the Adversary Proceeding in No. 09-10043 pending the conclusion of this Domestic Relations proceeding in the Superior Court, and Stayed the adjudication of Creditor Senyi's claims of over $600,000 against Yelverton. Ex. 3.

8.  On October 7, 2011, the Chapter 7 Trustee filed with the Bankruptcy Court a "Notice of Intent to Abandon Debtor's [state law] Claims against Former Spouse," wherein Yelverton would have the right to pursue state law claims with respect to Ms. Senyi in the D.C. Superior Court, with no interference from the Trustee.

9.  In Order, entered December 15, 2011, the Bankruptcy Court dismissed without prejudice the state law claims of Yelverton with respect to Ms. Senyi in Adversary Proceeding No. 09-10048, which had been Abandoned by the Chapter 7 Trustee, for Yelverton to pursue these claims before the Superior Court "because they no longer have any impact on the administration of the Bankruptcy Estate."  Ex. 4.

10.  On May 4, 2012, the Chapter 7 Trustee first disclosed a Settlement with the Defendants in Case No. 5:09-cv-331, whom are his siblings, Edmundson and Marm. Under its terms all the litigation claims of Yelverton against Edmundson and Marm, of over $3 Million, would be dismissed with prejudice, and the Trustee would convey to them Yelverton's 1,333.3 shares of stock in Yelverton Farms, Ltd., which is valued by Yelverton at $500,000.  All of the financial benefits of the Settlement would inure to the benefit of Edmundson and Marm, who are not Creditors of the Debtor Estate.

11.  Under the terms of the Settlement with the Chapter 7 Trustee, Yelverton's siblings would pay the Trustee the total amount of $110,000.  It would only be enough for the legal fees and administrative costs of the Trustee, with nothing left to pay Creditor claims, which include those of Ms. Senyi for over $600,000. These Creditor claims are the same as her claims for support in this Domestic Relations proceeding.

12. Under the terms of the Settlement, Yelverton would be stripped of his property rights and litigation claims in North Carolina, with nothing left to pay Ms. Senyi.

13. In Order, entered May 8, 2012, the Bankruptcy Court reaffirmed that Yelverton's pursuit of state law claims with respect to Ms. Senyi in the Superior Court would "have no impact on the administration of the Bankruptcy Estate." Ex. 5.

14. The approval of the Settlement between the Chapter 7 Trustee and Yelverton's siblings, Edmundson and Marm, is not final and remains pending. They have represented that it will not be consummated until all related litigation is final. This includes pending litigation before the U.S. District Court and the U.S. Court of Appeals.

15. In Decision, entered August 8, 2012, at p. 16, the Bankruptcy Court reaffirmed that it was deferring to the Superior Court to determine marital property, and in particular would defer as to any "equitable lien" determined to be on the marital property. Ex. 6.

### Law as to Equitable Liens

16. Under the law of the District of Columbia, "equitable liens" are recognized as to contracts where there is a distinct identification of property in which one is to be paid, and with notice, this "equitable lien" takes priority over the rights of others as to the property, which arise subsequently. Continental Casualty Co. v. Kelly, 106 F.2d 841, 843 (D.C. Cir. 1939); In Re Aumiller, 168 B.R. 811, 815-817 (Bkrtcy. D.D.C. 1994).

17. An "equitable lien" takes priority over the claims of a Bankruptcy Trustee who has notice of the equitable claim or lien as to the identified property. In Re Aumiller, id., at 818-819; In Re Hope, 231 B.R. 403, 423-426 (Bkrtcy. D.D.C. 1999).

18. A person would only be a bona fide purchaser of the property for valuable consideration, if such consideration is actually paid before the purchaser learns of the prior "equitable lien" or claim against the property. In Re Technical Land, Inc., 172 B.R. 429, 436 (Bkrtcy. D.D.C. 1994).

4

<u>Law as to Constructive Trusts</u>

19.   Under the law of the District of Columbia, a "constructive trust" is a "flexible remedial device used to force restitution in order to prevent unjust enrichment, as where a transfer of property was induced by a mistake of fact, or breach of fiduciary duty." <u>Hertz v. Klavan</u>, 374 A.2d 871, 873 (D.C. App. 1977), citing to Dan Dobbs, <u>Law of Remedies</u>, Section 4.3 (1973).

20.   A "constructive trust is a purely equitable device which can be applied with great flexibility, and arises by operation of law from the occurrence of   an unconscionable act for which <u>no</u> traditional relief is available.. and where the holder would be unjustly enriched if permitted to retain such interest" <u>Osin v. Johnson</u>, 243 F.2d 653. 656 (D.C. Cir. 1957).

21.   The purpose of a "constructive trust" is to allow one to recover the <u>specific</u> property, or any property substituted for it, and <u>not</u> merely a monetary judgment or cash proceeds for the supposed value of the property.  Dan Dobbs, <u>Law of Remedies</u>, Section 4.3 (2), p. 589, and n. 13, Second Edition (1993), citing to <u>Hertz v. Klavan</u>, <u>id</u>.

22.   A "constructive trust allows one to recover the asset even if he has <u>no</u> legal title to it, so long as that asset is regarded as belonging to him in an equitable sense." Dobbs, <u>id</u>., at p. 590.

23.   The "constructive trust is only used where the holder of the property has a legally recognized right to that property," and when a "court determines that the legal holder of the property is to make restitution, it first declares him to be a constructive trustee. and then orders him as trustee to make a transfer of the property and legal title to the beneficiary of the constructive trust." Dobbs, <u>id</u>.. at 591.

24.  Wrongdoing is <u>not</u> required in order to impose a "constructive trust," and may be imposed simply based upon a mistake of fact. Dobbs, <u>id</u>., at 598.

25.  A "constructive trust" may be imposed to provide for an equitable division of marital property. Dobbs, <u>id</u>., citing to <u>Cottman v. Cottman</u>, 468 A.2d 131 (Md. 1983).

26.  The beneficiary of the "constructive trust" obtains <u>priority</u> over other creditors and claimants against the holder of the identified property. Dobbs, <u>id</u>., at 593.

27.  A "constructive trust" may be used to allow recovery of property that might otherwise be protected under Bankruptcy law. Dobbs, <u>id</u>., at 593, n. 22.

28.  In a Bankruptcy, the beneficiary of a "constructive trust" is entitled to an "equitable lien" on the property, even where it was transferred to a <u>bona fide</u> purchaser for valuable consideration, so long as the purchaser had notice of the claim. Dobbs, <u>id</u>., at 598, n. 52.

29.  An "equitable lien" is a special and limited form of a "constructive trust" and works in substantially the same way. Dobbs, <u>id</u>., at 601.

<u>Applicable Law as to Bankruptcy</u>

30.  The nature and scope of the property interests of a Debtor in Bankruptcy are determined by state law. <u>Butner v. United States</u>, 440 U.S. 48, 54-55 (1979).

31.  Only the property of the Debtor, as determined by state law, is included in the Debtor Estate and under the control of the Chapter 7 Trustee, and does <u>not</u> include any equitable interest in the property in which the Debtor does <u>not</u> hold, even though holding legal title to the property. <u>In Re Hope</u>, 231 B.R., <u>supra</u>, at 412.

32.  To the extent that an interest in property is limited in the hands of the Debtor, it is equally limited in the hands of the Chapter 7 Trustee. <u>Id</u>., at 412, and n. 9.

33.  A Chapter 7 Trustee can reach the property of a Debtor only to the extent that a Creditor could, and thus cannot reach property that is "immune from judicial process" by a Creditor under state law.  In Re McNeilly, 249 B.R. 576, 584 (1st Cir. BAP 2000).

34.  Under the laws of the District of Columbia, an "equitable lien" and a "constructive trust" have priority over subsequent creditors or purchasers as to the property, who have notice of the lien or claim, and this includes Bankruptcy Trustees.  In Re Aumiller, 168 B.R., supra, at 818-819; In Re Hope, 231 B.R., supra, at 423-426; and In Re Technical Land, Inc., 172 B.R., supra, at 436.

35.  The Chapter 7 Trustee is authorized by law to administer the Bankruptcy Estate only for the benefit of Creditors and the Debtor, to whom he owes broad fiduciary duties, and not for the benefit of non-Creditors and non-parties to the Bankruptcy, to whom he owes no fiduciary duties.  See, 11 U.S.C. 704; In Re Ross, 475 B.R. 279, 282 (Bkrtcy. D.D.C. 2012), the Trustee must administer the Bankruptcy Estate for the benefit of Creditors.

Arguments in Support of Imposing a Constructive Trust

36.  An "equitable lien" arose in April 2008 in favor of Ms. Senyi as to the 1,333.3 shares of stock in Yelverton Farms, Ltd.  In the Promissory Note, dated April 2, 2008, the sale of this stock by Yelverton was specifically identified as the source of the funds to pay Ms. Senyi the amount of the first $100,000.  Ex. 1.

37.  Although the stock was never sold, under the principles of equity, it must be "regarded as done" that which Yelverton "agreed to do."  In Re Hope, 231 B.R., supra, at 426.  Thus, Ms. Senyi obtained in April 2008 an "equitable lien" on the equity in the stock, and Yelverton was divested of his equitable interest in the stock.

38. The Chapter 7 Trustee has had notice of this Promissory Note and "equitable lien" since at least October 2010, when Ms. Senyi presented it in her Proof of Claims against Yelverton in the amount of over $600,000, which was for her domestic support.

39. With this notice by Ms. Senyi to the Chapter 7 Trustee in October 2010, the "equitable lien" of Ms. Senyi on the 1,333.3 shares of stock in Yelverton Farms, Ltd., has priority over any claims of the Trustee to the stock under the Bankruptcy. In Re Aumiller, 168 B.R., supra, 815-817; In Re Hope, 231 B.R., supra, at 423-426.

40. With an "equitable lien" on the 1,333.3 shares of stock in favor of Ms. Senyi, a "constructive trust" must be imposed on this property against the Chapter 7 Trustee to prevent an "unjust enrichment" to him at the expense of Yelverton and Ms. Senyi for her domestic support. Osin v. Johnson, 243 F.2d, supra, at 656; Dobbs, supra, at 593, n. 22.

41. The Chapter 7 Trustee intends to sell this stock for $110,000, to the siblings of Yelverton, whom are Edmundson and Marm, and this amount would only pay his legal fees and administrative expenses, with nothing left to be paid to Ms. Senyi for her Creditor claims against Yelverton and for her domestic support owed by Yelverton.

42. A "constructive trust" may be imposed on the stock based upon a "mistake" by the Chapter 7 Trustee, with no showing of wrongdoing by him being necessary. Hertz v. Klavan, 374 A.2d, supra, at 873; Dobbs, supra, at 598. It appears the Chapter 7 Trustee was simply uninformed as to the applicability of "equitable liens" under District of Columbia law and their priority over his claims in Bankruptcy. Dobbs, id., at 598, n. 52.

43. Under Bankruptcy law, any equitable interest in property that Yelverton did not have at the time of filing for Bankruptcy on May 14, 2009, is not included in the Estate and not under the control of the Chapter 7 Trustee. In Re Hope, 231 B.R., supra. at 412.

8

44. With the "equitable lien" on the stock in favor of Ms. Senyi arising in April 2008, Yelverton was then divested of his equitable interest in the stock prior to him filing for Bankruptcy on May 14, 2009, and thus this equitable interest in the stock was <u>never</u> properly included as property of the Estate and was <u>never</u> properly under the control of the Chapter 7 Trustee. <u>In Re Hope</u>, 231 B.R., <u>supra</u>, at 412.

45. With the equity in the stock <u>never</u> properly being included as property of the Bankruptcy Estate and <u>never</u> properly being under the control of the Chapter 7 Trustee, he could have <u>no</u> "grievances," and thus <u>no</u> "standing" to object to a "constructive trust" being imposed on the stock. Dobbs, <u>supra</u>, at 593, n. 22, and 598, n. 52.

46. Edmundson and Marm, the siblings of Yelverton, could have <u>no</u> "grievances," and thus <u>no</u> "standing" to object to a "constructive trust" because they are <u>not</u> Creditors of the Bankruptcy Estate, and are <u>not</u> parties to the Bankruptcy, and thereby are owed <u>no</u> fiduciary duties by the Chapter 7 Trustee. 11 U.S.C. 704; <u>In Re Ross</u>, <u>id.</u>; Dobbs, <u>id.</u>

47. In <u>Order</u>, entered December 30, 2009; <u>Decision</u>, entered February 4, 2010, at pp. 4-5; and <u>Decision</u>, entered August 8, 2012, at p. 16, the Bankruptcy Court determined to <u>Abstain</u> from deciding state law questions of marital property rights and equitable liens, and determined to defer to the Superior Court as to these matters. Exs. 2-3, and 6.

48. In <u>Order</u>, entered December 15, 2011, the Bankruptcy Court accepted the <u>Abandonment</u> by the Chapter 7 Trustee of all state law claims for Yelverton to pursue before the Superior Court, with <u>no</u> interference by the Trustee. Ex. 4.

49. Thus, the Superior Court has full and complete authority to impose a "constructive trust" on the stock against the Chapter 7 Trustee based upon its independent judgment as to the law of the District of Columbia.

50.   Under D.C. Code, Section 11-1101 (8), the Superior Court has full and complete authority to act with respect to any property that may be considered to be located in another state. Davis v. Davis, 957 A.2d 576, 580 (D.C. 2008).

51.   Under the "constructive trust," Ms. Senyi has the right to possession of the 1,333.3 shares of stock, and not just the monetary value in cash. Dobbs, supra, at 589.

52. Under the "constructive trust," the Chapter 7 Trustee would be ordered by the Superior Court to transfer to Ms. Senyi the 1,333.3 shares of stock and the legal title to it. Dobbs, supra, at 591.

53.   The purported "renunciation" on October 1, 2012, by Ms. Senyi of marital entireties property would have no effect on the imposition of a "constructive trust."

54.   The imposition of a "constructive trust" is wholly immaterial to whether the subject property is marital Entireties in view of it being a matter of applying equitable principles, and the beneficiary need not even have had any legal title to the property. Hertz v. Klavan, 374 A.2d, supra, at 873; Dobbs, supra, at 590.

55.   But regardless, in view of Ms. Senyi being Pro Se, being a citizen and resident of a foreign nation, and her having no training in Anglo-American Common Law and U.S. statutory law, an independent counsel must be appointed to advise her with respect to her marital property rights and the valuation of the property.  Otherwise, a Remand would be required as to the "due process" rights of the parties being violated.

56.   If Ms. Senyi should be allowed to "renounce" the equitable lien and marital property, then the principles of equity would require that possession and title to such property should instead go to a Trust under Yelverton, with the requirement that it be used to pay Creditor claims and domestic support owed to her by Yelverton.

57.   Accordingly, a "constructive trust" must be imposed against the Chapter 7 Trustee on the 1,333.3 shares of stock in Yelverton Farms, Ltd., and on Cause of Action No. 1 in Case No. 5:09-cv-331, as to liquidation of that stock for "fair value," with legal title to this stock and the litigation claims transferred to Ms. Senyi, or to a Trust under Yelverton in her favor, with the requirement to pay any Creditor claims and domestic support owed to her by Yelverton.  Only what amount in cash that Ms. Senyi or the Trust could subsequently receive for the stock would reduce the amount of any Creditor claims and domestic support that Yelverton may owe her.

WHEREFORE, in view of the foregoing, it is requested that a "constructive trust" be imposed on equitable interests in property held by the Chapter 7 Trustee in order to make restitution to Ms. Senyi, and thus to prevent "unjust enrichment" to the Trustee, at the expense of Yelverton and Ms. Senyi as to debts and domestic support owed to her, based upon the Trustee's "mistake" in the application of law of the District of Columbia with respect to an "equitable lien" in favor of Ms. Senyi arising in April 2008 and its priority under D.C. law over his claims in the Bankruptcy first arising after 2010.

This the 11th day of February 2013.

Respectfully submitted,

Stephen Thomas Yelverton, Pro Se,
D.C. Bar No. 264044
601 Pennsylvania Ave, N.W., Suite 900 South
Washington, D.C. 20004
Tel. 202-702-6708
Fax 202-403-3801

CERTIFICATE OF SERVICE

I, Stephen Thomas Yelverton, hereby certify that a copy of this Motion was served the 11th day of February, 2013, U.S Mail, first class, postage prepaid, or e-mail to the following persons or parties:

Wendell W. Webster, Esq., Chapter 7 Trustee
Linda M. Correia, Esq.
Natalie S. Walker, Esq.
Webster, Frederickson
1775 K St., NW, Suite 600
Washington, DC 20006

Alexandra Senyi de Nagy-Unyom, Pro Se,
Bergheidengasse 8-1-16
1130 Vienna, Austria


Stephen Thomas Yelverton, Esq.
D.C. Bar No. 264044

EXHIBIT 3

Search Cornell

Search all of LII...     Go

Follow  9,116 followers     Like  11k

ABOUT LII  /  GET THE LAW  /  FIND A LAWYER  /  LEGAL ENCYCLOPEDIA  /  HELP OUT

USC   › Title 11 › Chapter 5 › Subchapter II › § 522     PREV NEXT

# 11 USC § 522 - Exemptions

**USC-prelim**    US Code    Notes    Updates

USC *Prelim* is a preliminary release and may be subject to further revision before it is released again as a final version.

Current through Pub. L. 112-131. (See Public Laws for the current Congress.)

(a) In this section—

   (1) "dependent" includes spouse, whether or not actually dependent, and

   (2) "value" means fair market value as of the date of the filing of the petition or, with respect to property that becomes property of the estate after such date, as of the date such property becomes property of the estate.

(b)

   (1) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (2) or, in the alternative, paragraph (3) of this subsection. In joint cases filed under section 302 of this title and individual cases filed under section 301 or 303 of this title by or against debtors who are husband and wife, and whose estates are ordered to be jointly administered under Rule 1015(b) of the Federal Rules of Bankruptcy Procedure, one debtor may not elect to exempt property listed in paragraph (2) and the other debtor elect to exempt property listed in paragraph (3) of this subsection. If the parties cannot agree on the alternative to be elected, they shall be deemed to elect paragraph (2), where such election is permitted under the law of the jurisdiction where the case is filed.

   (2) Property listed in this paragraph is property that is specified under subsection (d), unless the State law that is applicable to the debtor under paragraph (3)(A) specifically does not so authorize.

   (3) Property listed in this paragraph is—

   (A) subject to subsections (o) and (p), any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition to the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition or if the debtor's domicile has not been located in a single State for such 730-day period, the place in which the debtor's domicile was located for 180 days immediately preceding the 730-day period or for a longer portion of such 180-day period than in any other place;

   (B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law, and

   (C) retirement funds to the extent that those funds are in a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986.

If the effect of the domiciliary requirement under subparagraph (A) is to render the

U S CODE TOOLBOX

SEARCH US CODE
     Go
**Wex**. Bankruptcy Law  Overview

Download the PDF (14 pgs)
Title 11 USC, RSS Feed
Table of Popular Names
Parallel Table of Authorities

0

Donations cover only 20% of our costs

**Chapter 7 Means Test**
www.Chapter7.com
Determine If Chapter 7 Is an Option for You, Complete a Free Evaluation

**Investing in Silver Coins**
www.LearCapital.com
Know the Facts Before You Buy. We'll Send You a Free Investor Kit!

AdChoices ▷

LAW ABOUT... ARTICLES FROM WEX

• Bankruptcy
• Debtor and creditor
• Contractual lien
• Secured debt
• Mortgage

FIND A LAWYER

All lawyers

GET INVOLVED

   LII Announce Blog

   LII Supreme Court Bulletin

   MAKE A DONATION
   CONTRIBUTE CONTENT
   BECOME A SPONSOR
   GIVE FEEDBACK

debtor ineligible for any exemption, the debtor may elect to exempt property that is specified under subsection (d).

(4) For purposes of paragraph (3)(C) and subsection (d)(12), the following shall apply:

(A) If the retirement funds are in a retirement fund that has received a favorable determination under section 7805 of the Internal Revenue Code of 1986, and that determination is in effect as of the date of the filing of the petition in a case under this title, those funds shall be presumed to be exempt from the estate.

(B) If the retirement funds are in a retirement fund that has not received a favorable determination under such section 7805, those funds are exempt from the estate if the debtor demonstrates that—

(i) no prior determination to the contrary has been made by a court or the Internal Revenue Service, and

(ii)

(I) the retirement fund is in substantial compliance with the applicable requirements of the Internal Revenue Code of 1986, or

(II) the retirement fund fails to be in substantial compliance with the applicable requirements of the Internal Revenue Code of 1986 and the debtor is not materially responsible for that failure.

(C) A direct transfer of retirement funds from 1 fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986, under section 401(a)(31) of the Internal Revenue Code of 1986, or otherwise, shall not cease to qualify for exemption under paragraph (3)(C) or subsection (d)(12) by reason of such direct transfer.

(D)

(i) Any distribution that qualifies as an eligible rollover distribution within the meaning of section 402(c) of the Internal Revenue Code of 1986 or that is described in clause (ii) shall not cease to qualify for exemption under paragraph (3)(C) or subsection (d)(12) by reason of such distribution.

(ii) A distribution described in this clause is an amount that—

(I) has been distributed from a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986, and

(II) to the extent allowed by law, is deposited in such a fund or account not later than 60 days after the distribution of such amount.

(c) Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case, except—

(1) a debt of a kind specified in paragraph (1) or (5) of section 523 (a) (in which case, notwithstanding any provision of applicable nonbankruptcy law to the contrary, such property shall be liable for a debt of a kind specified in such paragraph),

(2) a debt secured by a lien that is—

(A)

(i) not avoided under subsection (f) or (g) of this section or under section 544, 545, 547, 548, 549, or 724 (a) of this title, and

(ii) not void under section 506 (d) of this title, or

(B) a tax lien, notice of which is properly filed;

**After Chapter 7 Mortgages**
chapter7-mortgage.lendgo.com
Rates at 2.3%. $150,000 Mortgage for $577/mo. Free Quotes! 2.6%apr

**Virtual Wallet® Student**
PNC.com/VirtualWalletStudent
Official Site. Control Spending and Manage Finances Like Never Before.

**Got An IRS Lien Notice?**
www.totaltaxlawyer.com
Work With A Tax Lawyer For An Installment Agreement. Free Review!

AdChoices ▷

(3) a debt of a kind specified in section 523 (a)(4) or 523 (a)(6) of this title owed by an institution-affiliated party of an insured depository institution to a Federal depository institutions regulatory agency acting in its capacity as conservator, receiver, or liquidating agent for such institution, or

(4) a debt in connection with fraud in the obtaining or providing of any scholarship, grant, loan, tuition, discount, award, or other financial assistance for purposes of financing an education at an institution of higher education (as that term is defined in section 101 of the Higher Education Act of 1965 (20 U.S.C. 1001)).

(d) The following property may be exempted under subsection (b)(2) of this section

(1) The debtor's aggregate interest, not to exceed $15,000 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence, in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor.

(2) The debtor's interest, not to exceed $2,400 in value, in one motor vehicle.

(3) The debtor's interest, not to exceed $400 in value in any particular item or $8,000 in aggregate value, in household furnishings, household goods, wearing apparel, appliances, books, animals, crops, or musical instruments, that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor.

(4) The debtor's aggregate interest, not to exceed $1,000 in value, in jewelry held primarily for the personal, family, or household use of the debtor or a dependent of the debtor.

(5) The debtor's aggregate interest in any property, not to exceed in value $800 plus up to $7,500 of any unused amount of the exemption provided under paragraph (1) of this subsection.

(6) The debtor's aggregate interest, not to exceed $1,500 in value, in any implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor.

(7) Any unmatured life insurance contract owned by the debtor, other than a credit life insurance contract.

(8) The debtor's aggregate interest, not to exceed in value $8,000 less any amount of property of the estate transferred in the manner specified in section 542 (d) of this title, in any accrued dividend or interest under, or loan value of, any unmatured life insurance contract owned by the debtor under which the insured is the debtor or an individual of whom the debtor is a dependent.

(9) Professionally prescribed health aids for the debtor or a dependent of the debtor.

(10) The debtor's right to receive—

(A) a social security benefit, unemployment compensation, or a local public assistance benefit,

(B) a veterans' benefit,

(C) a disability, illness, or unemployment benefit;

(D) alimony, support, or separate maintenance, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor;

(E) a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless—

(i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose;

(ii) such payment is on account of age or length of service, and

(iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b), or 408 of the Internal Revenue Code of 1986.

(11) The debtor's right to receive, or property that is traceable to—

(A) an award under a crime victim's reparation law,

(B) a payment on account of the wrongful death of an individual of whom the debtor was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor,

(C) a payment under a life insurance contract that insured the life of an individual of whom the debtor was a dependent on the date of such individual's death, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor,

(D) a payment, not to exceed $15,000, on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor or an individual of whom the debtor is a dependent, or

(E) a payment in compensation of loss of future earnings of the debtor or an individual of whom the debtor is or was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.

(12) Retirement funds to the extent that those funds are in a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986.

(e) A waiver of an exemption executed in favor of a creditor that holds an unsecured claim against the debtor is unenforceable in a case under this title with respect to such claim against property that the debtor may exempt under subsection (b) of this section. A waiver by the debtor of a power under subsection (f) or (h) of this section to avoid a transfer, under subsection (g) or (i) of this section to exempt property, or under subsection (i) of this section to recover property or to preserve a transfer, is unenforceable in a case under this title.

(f)

(1) Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(A) a judicial lien, other than a judicial lien that secures a debt of a kind that is specified in section 523 (a)(5); or

(B) a nonpossessory, nonpurchase-money security interest in any—

(i) household furnishings, household goods, wearing apparel, appliances, books,

animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor.

(ii) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or

(iii) professionally prescribed health aids for the debtor or a dependent of the debtor.

(2)

(A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—

(i) the lien;

(ii) all other liens on the property; and

(iii) the amount of the exemption that the debtor could claim if there were no liens on the property,

exceeds the value that the debtor's interest in the property would have in the absence of any liens.

(B) In the case of a property subject to more than 1 lien, a lien that has been avoided shall not be considered in making the calculation under subparagraph (A) with respect to other liens.

(C) This paragraph shall not apply with respect to a judgment arising out of a mortgage foreclosure.

(3) In a case in which State law that is applicable to the debtor—

(A) permits a person to voluntarily waive a right to claim exemptions under subsection (d) or prohibits a debtor from claiming exemptions under subsection (d), and

(B) either permits the debtor to claim exemptions under State law without limitation in amount, except to the extent that the debtor has permitted the fixing of a consensual lien on any property or prohibits avoidance of a consensual lien on property otherwise eligible to be claimed as exempt property,

the debtor may not avoid the fixing of a lien on an interest of the debtor or a dependent of the debtor in property if the lien is a nonpossessory, nonpurchase-money security interest in implements, professional books, or tools of the trade of the debtor or a dependent of the debtor or farm animals or crops of the debtor or a dependent of the debtor to the extent the value of such implements, professional books, tools of the trade, animals, and crops exceeds $5,000.

(4)

(A) Subject to subparagraph (B), for purposes of paragraph (1)(B), the term "household goods" means—

(i) clothing;

(ii) furniture;

(iii) appliances;

(iv) 1 radio;

(v) 1 television;

(vi) 1 VCR;

(vii) linens;

(viii) china;

(ix) crockery;

(x) kitchenware;

(xi) educational materials and educational equipment primarily for the use of minor dependent children of the debtor;

**(xii)** medical equipment and supplies,

**(xiii)** furniture exclusively for the use of minor children, or elderly or disabled dependents of the debtor,

**(xiv)** personal effects (including the toys and hobby equipment of minor dependent children and wedding rings) of the debtor and the dependents of the debtor, and

**(xv)** 1 personal computer and related equipment.

**(B)** The term "household goods" does not include—

**(i)** works of art (unless by or of the debtor, or any relative of the debtor);

**(ii)** electronic entertainment equipment with a fair market value of more than $500 in the aggregate (except 1 television, 1 radio, and 1 VCR);

**(iii)** items acquired as antiques with a fair market value of more than $500 in the aggregate,

**(iv)** jewelry with a fair market value of more than $500 in the aggregate (except wedding rings), and

**(v)** a computer (except as otherwise provided for in this section), motor vehicle (including a tractor or lawn tractor), boat, or a motorized recreational device, conveyance, vehicle, watercraft, or aircraft.

**(g)** Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510 (c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—

**(1)**

**(A)** such transfer was not a voluntary transfer of such property by the debtor, and

**(B)** the debtor did not conceal such property, or

**(2)** the debtor could have avoided such transfer under subsection (f)(1)(B) of this section.

**(h)** The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if—

**(1)** such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724 (a) of this title or recoverable by the trustee under section 553 of this title, and

**(2)** the trustee does not attempt to avoid such transfer.

**(i)**

**(1)** If the debtor avoids a transfer or recovers a setoff under subsection (f) or (h) of this section, the debtor may recover in the manner prescribed by, and subject to the limitations of, section 550 of this title, the same as if the trustee had avoided such transfer, and may exempt any property so recovered under subsection (b) of this section.

**(2)** Notwithstanding section 551 of this title, a transfer avoided under section 544, 545, 547, 548, 549, or 724 (a) of this title, under subsection (f) or (h) of this section, or property recovered under section 553 of this title, may be preserved for the benefit of the debtor to the extent that the debtor may exempt such property under subsection (g) of this section or paragraph (1) of this subsection.

**(j)** Notwithstanding subsections (g) and (i) of this section, the debtor may exempt a particular kind of property under subsections (g) and (i) of this section only to the extent that the debtor has exempted less property in value of such kind than that to which the debtor is entitled under subsection (b) of this section.

**(k)** Property that the debtor exempts under this section is not liable for payment of any administrative expense except—

(1) the aliquot share of the costs and expenses of avoiding a transfer of property that the debtor exempts under subsection (g) of this section, or of recovery of such property, that is attributable to the value of the portion of such property exempted in relation to the value of the property recovered, and

(2) any costs and expenses of avoiding a transfer under subsection (f) or (h) of this section, or of recovery of property under subsection (i)(1) of this section, that the debtor has not paid.

(l) The debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section. If the debtor does not file such a list, a dependent of the debtor may file such a list, or may claim property as exempt from property of the estate on behalf of the debtor. Unless a party in interest objects, the property claimed as exempt on such list is exempt.

(m) Subject to the limitation in subsection (b), this section shall apply separately with respect to each debtor in a joint case.

(n) For assets in individual retirement accounts described in section 408 or 408A of the Internal Revenue Code of 1986, other than a simplified employee pension under section 408(k) of such Code or a simple retirement account under section 408(p) of such Code, the aggregate value of such assets exempted under this section, without regard to amounts attributable to rollover contributions under section 402(c), 402(e)(6), 403(a)(4), 403(a)(5), and 403(b)(8) of the Internal Revenue Code of 1986, and earnings thereon, shall not exceed $1,000,000 in a case filed by a debtor who is an individual, except that such amount may be increased if the interests of justice so require.

(o) For purposes of subsection (b)(3)(A), and notwithstanding subsection (a), the value of an interest in—

(1) real or personal property that the debtor or a dependent of the debtor uses as a residence,

(2) a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence;

(3) a burial plot for the debtor or a dependent of the debtor, or

(4) real or personal property that the debtor or a dependent of the debtor claims as a homestead,

shall be reduced to the extent that such value is attributable to any portion of any property that the debtor disposed of in the 10-year period ending on the date of the filing of the petition with the intent to hinder, delay, or defraud a creditor and that the debtor could not exempt, or that portion that the debtor could not exempt, under subsection (b), if on such date the debtor had held the property so disposed of.

(p)

(1) Except as provided in paragraph (2) of this subsection and sections 544 and 548, as a result of electing under subsection (b)(3)(A) to exempt property under State or local law, a debtor may not exempt any amount of interest that was acquired by the debtor during the 1215-day period preceding the date of the filing of the petition that exceeds in the aggregate $125,000 in value in—

(A) real or personal property that the debtor or a dependent of the debtor uses as a residence,

(B) a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence;

(C) a burial plot for the debtor or a dependent of the debtor, or

(D) real or personal property that the debtor or dependent of the debtor claims as a homestead.

(2)

(A) The limitation under paragraph (1) shall not apply to an exemption claimed under subsection (b)(3)(A) by a family farmer for the principal residence of such farmer.

(B) For purposes of paragraph (1), any amount of such interest does not include any

interest transferred from a debtor's previous principal residence (which was acquired prior to the beginning of such 1215-day period) into the debtor's current principal residence, if the debtor's previous and current residences are located in the same State.

**(q)**

**(1)** As a result of electing under subsection (b)(3)(A) to exempt property under State or local law, a debtor may not exempt any amount of an interest in property described in subparagraphs (A), (B), (C), and (D) of subsection (p)(1) which exceeds in the aggregate $125,000 if—

**(A)** the court determines, after notice and a hearing, that the debtor has been convicted of a felony (as defined in section 3156 of title 18), which under the circumstances, demonstrates that the filing of the case was an abuse of the provisions of this title; or

**(B)** the debtor owes a debt arising from—

**(i)** any violation of the Federal securities laws (as defined in section 3(a)(47) of the Securities Exchange Act of 1934), any State securities laws, or any regulation or order issued under Federal securities laws or State securities laws,

**(ii)** fraud, deceit, or manipulation in a fiduciary capacity or in connection with the purchase or sale of any security registered under section 12 or 15(d) of the Securities Exchange Act of 1934 or under section 6 of the Securities Act of 1933,

**(iii)** any civil remedy under section 1964 of title 18, or

**(iv)** any criminal act, intentional tort, or willful or reckless misconduct that caused serious physical injury or death to another individual in the preceding 5 years.

**(2)** Paragraph (1) shall not apply to the extent the amount of an interest in property described in subparagraphs (A), (B), (C), and (D) of subsection (p)(1) is reasonably necessary for the support of the debtor and any dependent of the debtor.

*LII has no control over and does not endorse any external Internet site that contains links to or references LII.*

ABOUT LII     CONTACT US     ADVERTISE HERE     HELP     TERMS OF USE     PRIVACY

4/18/2013 5:55 PM

EXHIBIT 4

Search Cornell

Search all of LII          Go

Follow   9,125 followers     Like   11k

ABOUT LII   /   GET THE LAW   /   FIND A LAWYER   /   LEGAL ENCYCLOPEDIA   /   HELP OUT

USC   › Title 28 › Part V › Chapter 123 › § 1930          PREV NEXT

# 28 USC § 1930 - Bankruptcy fees

There is 1 Update Pending. Select the tab below to view.

**USC-prelim**     US Code     Notes     Updates

USC *Prelim* is a preliminary release and may be subject to further revision before it is released again as a final version.

Current through Pub. L. 112-283. (See Public Laws for the current Congress.)

**(a)** The parties commencing a case under title 11 shall pay to the clerk of the district court or the clerk of the bankruptcy court, if one has been certified pursuant to section 156 (b) of this title, the following filing fees

  **(1)** For a case commenced under—

    **(A)** chapter 7 of title 11, $245, and

    **(B)** chapter 13 of title 11, $235.

  **(2)** For a case commenced under chapter 9 of title 11, equal to the fee specified in paragraph (3) for filing a case under chapter 11 of title 11. The amount by which the fee payable under this paragraph exceeds $300 shall be deposited in the fund established under section 1931 of this title.

  **(3)** For a case commenced under chapter 11 of title 11 that does not concern a railroad, as defined in section 101 of title 11, $1,167.

  **(4)** For a case commenced under chapter 11 of title 11 *concerning* a railroad, as so defined, $1,000.

  **(5)** For a case commenced under chapter 12 of title 11, $200.

  **(6)** In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United States trustee, for deposit in the Treasury, in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) until the case is converted or dismissed, whichever occurs first. The fee shall be $325 for each quarter in which disbursements total less than $15,000; $650 for each quarter in which disbursements total $15,000 or more but less than $75,000; $975 for each quarter in which disbursements total $75,000 or more but less than $150,000, $1,625 for each quarter in which disbursements total $150,000 or more but less than $225,000, $1,950 for each quarter in which disbursements total $225,000 or more but less than $300,000; $4,875 for each quarter in which disbursements total $300,000 or more but less than $1,000,000; $6,500 for each quarter in which disbursements total $1,000,000 or more but less than $2,000,000; $9,750 for each quarter in which disbursements total $2,000,000 or more but less than $3,000,000, $10,400 for each quarter in which disbursements total $3,000,000 or more but less than $5,000,000, $13,000 for each quarter in which disbursements total $5,000,000 or more but less than $15,000,000; $20,000 for each quarter in which disbursements total $15,000,000 or more but less than $30,000,000, $30,000 for each quarter in which disbursements total more than $30,000,000. The fee shall be payable on the last day of the calendar month following the calendar quarter for which the fee is owed.

U.S CODE TOOLBOX

SEARCH US CODE
                    Go
Law about    Articles from Wex

Download the PDF (6 pgs)
Title 28 USC, RSS Feed
Table of Popular Names
Parallel Table of Authorities

0

Donations cover only 20% of our costs

**Intro to Legal Studies**
www.UMassULearn.net
Enroll now in Legal 250 Online Summer with UMass, Graduate Early.

**Chapter 7 Means Test**
www.Chapter7.com
Determine If Chapter 7 Is an Option for You, Complete a Free Evaluation

AdChoices ▷

LAW ABOUT: ARTICLES FROM WEX

• Bankruptcy court
• Bankruptcy
• 342 notice
• Bankruptcy fraud
• 707(b) action

FIND A LAWYER

All lawyers

GET INVOLVED

  LII Announce Blog
  LII Supreme Court Bulletin

  MAKE A DONATION
  CONTRIBUTE CONTENT
  BECOME A SPONSOR
  GIVE FEEDBACK

**Chapter 7 Means Test**
www.Chapter7.com
Determine If Chapter 7 Is an Option for You, Complete a Free Evaluation

AdChoices ▷

(7) In districts that are not part of a United States trustee region as defined in section 581 of this title, the Judicial Conference of the United States may require the debtor in a case under chapter 11 of title 11 to pay fees equal to those imposed by paragraph (6) of this subsection. Such fees shall be deposited as offsetting receipts to the fund established under section 1931 of this title and shall remain available until expended.

An individual commencing a voluntary case or a joint case under title 11 may pay such fee in installments. For converting, on request of the debtor, a case under chapter 7, or 13 of title 11, to a case under chapter 11 of title 11, the debtor shall pay to the clerk of the district court or the clerk of the bankruptcy court, if one has been certified pursuant to section 156 (b) of this title, a fee of the amount equal to the difference between the fee specified in paragraph (3) and the fee specified in paragraph (1).





**Arlington Campus**
Now Enrolling
Spring • Summer • Fall

**CHAMBERLAIN**
*College of Nursing*
© 2012 Chamberlain College of Nursing, LLC
All rights reserved

(b) The Judicial Conference of the United States may prescribe additional fees in cases under title 11 of the same kind as the Judicial Conference prescribes under section 1914 (b) of this title.

(c) Upon the filing of any separate or joint notice of appeal or application for appeal or upon the receipt of any order allowing, or notice of the allowance of, an appeal or a writ of certiorari $5 shall be paid to the clerk of the court, by the appellant or petitioner.

(d) Whenever any case or proceeding is dismissed in any bankruptcy court for want of jurisdiction, such court may order the payment of just costs.

(e) The clerk of the court may collect only the fees prescribed under this section.

(f)

(1) Under the procedures prescribed by the Judicial Conference of the United States, the district court or the bankruptcy court may waive the filing fee in a case under chapter 7 of title 11 for an individual if the court determines that such individual has income less than 150 percent of the income official poverty line (as defined by the Office of Management and Budget, and revised annually in accordance with section 673(2) of the Omnibus Budget Reconciliation Act of 1981) applicable to a family of the size involved and is unable to pay that fee in installments. For purposes of this paragraph, the term "filing fee" means the filing fee required by subsection (a), or any other fee prescribed by the Judicial Conference under subsections (b) and (c) that is payable to the clerk upon the commencement of a case under chapter 7.

(2) The district court or the bankruptcy court may waive for such debtors other fees prescribed under subsections (b) and (c).

(3) This subsection does not restrict the district court or the bankruptcy court from waiving, in accordance with Judicial Conference policy, fees prescribed under this section for other debtors and creditors.

*LII has no control over and does not endorse any external Internet site that contains links to or references LII.*

ABOUT LII      CONTACT US      ADVERTISE HERE      HELP      TERMS OF USE      PRIVACY

EXHIBIT 5

Rule 1009. Amendments of Voluntary Petitions, Lists... Rules Document 5   Filed 04/19/13   Page 65 of 71 ...ll.edu/rules/frbp/rule_1009

1 of 2

Search Cornell

Search all of LII..      Go

Follow   9,116 followers    Like  11k

ABOUT LII    /   GET THE LAW    /   FIND A LAWYER    /   LEGAL ENCYCLOPEDIA    /   HELP OUT

**Federal Rules of Bankruptcy Procedure**      ABOUT SEARCH

# RULE 1009. AMENDMENTS OF VOLUNTARY PETITIONS, LISTS, SCHEDULES AND STATEMENTS

(a) GENERAL RIGHT TO AMEND. A voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed. The debtor shall give notice of the amendment to the trustee and to any entity affected thereby. On motion of a party in interest, after notice and a hearing, the court may order any voluntary petition, list, schedule, or statement to be amended and the clerk shall give notice of the amendment to entities designated by the court.

(b) STATEMENT OF INTENTION. The statement of intention may be amended by the debtor at any time before the expiration of the period provided in §521(a) of the Code. The debtor shall give notice of the amendment to the trustee and to any entity affected thereby.

(c) STATEMENT OF SOCIAL SECURITY NUMBER. If a debtor becomes aware that the statement of social security number submitted under Rule 1007(f) is incorrect, the debtor shall promptly submit an amended verified statement setting forth the correct social security number. The debtor shall give notice of the amendment to all of the entities required to be included on the list filed under Rule 1007(a)(1) or (a)(2).

(d) TRANSMISSION TO UNITED STATES TRUSTEE. The clerk shall promptly transmit to the United States trustee a copy of every amendment filed or submitted under subdivision (a), (b), or (c) of this rule.

### NOTES

(As amended Mar. 30, 1987, eff. Aug. 1, 1987, Apr. 30, 1991, eff. Aug. 1, 1991; Apr. 12, 2006, eff. Dec. 1, 2006, Apr. 23, 2008, eff. Dec. 1, 2008.)

#### NOTES OF ADVISORY COMMITTEE ON RULES—1983

This rule continues the permissive approach adopted by former Bankruptcy Rule 110 to amendments of voluntary petitions and accompanying papers. Notice of any amendment is required to be given to the trustee. This is particularly important with respect to any amendment of the schedule of property affecting the debtor's claim of exemptions. Notice of any amendment of the schedule of liabilities is to be given to any creditor whose claim is changed or newly listed.

The rule does not continue the provision permitting the court to order an amendment on its own initiative. Absent a request in some form by a party in interest, the court should not be involved in administrative matters affecting the estate.

If a list or schedule is amended to include an additional creditor, the effect on the dischargeability of the creditor's claim is governed by the provisions of §523(a)(3) of the Code.

#### NOTES OF ADVISORY COMMITTEE ON RULES—1987 AMENDMENT

*Subdivision (a)* is amended to require notice and a hearing in the event a party in interest other than the debtor seeks to amend. The number of copies of the amendment will be determined by local rule of court.

TOOLBOX

SEARCH FEDERAL RULES OF BANKRUPTCY PROCEDURE
Go
• Wex  Bankruptcy Overview

0

Donations cover only 20% of our costs

**Chapter 7 Means Test**
www.Chapter7.com
Is Chapter 7 Is an Option For You? Find Out With a Free Case Review.

**Credit Counseling Class**
www.startfreshtoday.com/Save20Now
Pre-Bankruptcy Course Online Now. Save $20 on Both Bankruptcy Courses

**After Chapter 7 Mortgages**
chapter7-mortgage.lendgo.com
Rates at 2.3%. $150,000 Mortgage for $577/mo. Free Quotes! 2.6%apr      AdChoices [>

LAW ABOUT .. ARTICLES FROM WEX

• Bankruptcy
• 341 meeting
• 341 notice
• Absolute-bar rule
• Default

FIND A LAWYER

All lawyers

GET INVOLVED

LII Announce Blog

LII Supreme Court Bulletin

MAKE A DONATION
CONTRIBUTE CONTENT
BECOME A SPONSOR
GIVE FEEDBACK

## Chapter 7 Filing
www.BankruptcyCentral.com
Complete a Bankruptcy Evaluation to Begin the Chapter 7 Filing Process

AdChoices [▷



*Subdivision (b)* is added to treat amendments of the statement of intention separately from other amendments. The intention of the individual debtor must be performed within 45 days of the filing of the statement, unless the court extends the period. Subdivision (b) limits the time for amendment to the time for performance under §521(2)(B) of the Code or any extension granted by the court.

#### NOTES OF ADVISORY COMMITTEE ON RULES—1991 AMENDMENT

The amendments to subdivision (a) are stylistic.

*Subdivision (c)* is derived from Rule X-1002(a) and is designed to provide the United States trustee with current information to enable that office to participate effectively in the case.

#### COMMITTEE NOTES ON RULES—2006 AMENDMENT

*Subdivision (c).* Rule 2002(a)(1) provides that the notice of the §341 meeting of creditors include the debtor's social security number. It provides creditors with the full number while limiting publication of the social security number otherwise to the final four digits of the number to protect the debtor's identity from others who do not have the same need for that information. If, however, the social security number that the debtor submitted under Rule 1007(f) is incorrect, then the only notice to the entities contained on the list filed under Rule 1007(a)(1) or (a)(2) would be incorrect. This amendment adds a new subdivision (c) that directs the debtor to submit a verified amended statement of social security number and to give notice of the new statement to all entities in the case who received the notice containing the erroneous social security number.

*Subdivision (d).* Former subdivision (c) becomes subdivision (d) and is amended to include new subdivision (c) amendments in the list of documents that the clerk must transmit to the United States trustee.

Other amendments are stylistic.

*Changes Made After Publication.* No changes since publication.

#### COMMITTEE NOTES ON RULES—2008 AMENDMENT

Subdivision (b) is amended to conform to the 2005 amendments to §521 of the Code.

*Changes Made After Publication.* No changes were made after publication.

‹ Rule 1008. Verification of Petitions and Accompanying Papers                          up                          Rule 1010 Service of Involuntary Petition and Summons, Petition For Recognition of a Foreign Nonmain Proceeding ›

ABOUT LII          CONTACT US          ADVERTISE HERE          HELP          TERMS OF USE          PRIVACY

EXHIBIT 6

Search Cornell

Search all of LII .     Go

Follow   9,116 followers      Like   11k

ABOUT LII   /   GET THE LAW   /   FIND A LAWYER   /   LEGAL ENCYCLOPEDIA   /   HELP OUT

Federal Rules of Bankruptcy Procedure     ABOUT SEARCH

# RULE 4003. EXEMPTIONS

(a) CLAIM OF EXEMPTIONS. A debtor shall list the property claimed as exempt under §522 of the Code on the schedule of assets required to be filed by Rule 1007. If the debtor fails to claim exemptions or file the schedule within the time specified in Rule 1007, a dependent of the debtor may file the list within 30 days thereafter.

(b) OBJECTING TO A CLAIM OF EXEMPTIONS.

(1) Except as provided in paragraphs (2) and (3), a party in interest may file an objection to the list of property claimed as exempt within 30 days after the meeting of creditors held under §341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later. The court may, for cause, extend the time for filing objections if, before the time to object expires, a party in interest files a request for an extension.

(2) The trustee may file an objection to a claim of exemption at any time prior to one year after the closing of the case if the debtor fraudulently asserted the claim of exemption. The trustee shall deliver or mail the objection to the debtor and the debtor's attorney, and to any person filing the list of exempt property and that person's attorney.

(3) An objection to a claim of exemption based on §522(q) shall be filed before the closing of the case. If an exemption is first claimed after a case is reopened, an objection shall be filed before the reopened case is closed.

(4) A copy of any objection shall be delivered or mailed to the trustee, the debtor and the debtor's attorney, and the person filing the list and that person's attorney.

(c) BURDEN OF PROOF. In any hearing under this rule, the objecting party has the burden of proving that the exemptions are not properly claimed. After hearing on notice, the court shall determine the issues presented by the objections.

(d) AVOIDANCE BY DEBTOR OF TRANSFERS OF EXEMPT PROPERTY. A proceeding by the debtor to avoid a lien or other transfer of property exempt under §522(f) of the Code shall be by motion in accordance with Rule 9014. Notwithstanding the provisions of subdivision (b), a creditor may object to a motion filed under §522(f) by challenging the validity of the exemption asserted to be impaired by the lien.

NOTES

(As amended Mar. 30, 1987, eff. Aug. 1, 1987, Apr. 30, 1991, eff. Aug. 1, 1991; Apr. 17, 2000, eff. Dec. 1, 2000, Apr. 23, 2008, eff. Dec. 1, 2008.)

NOTES OF ADVISORY COMMITTEE ON RULES—1983

This rule is derived from §522(l) of the Code and, in part, former Bankruptcy Rule 403. The Code changes the thrust of that rule by making it the burden of the debtor to list his exemptions and the burden of parties in interest to raise objections in the absence of which "the property claimed as exempt on such list is exempt;" §522(l).

*Subdivision (a).* While §522(l) refers to a list of property claimed as exempt, the rule

TOOLBOX

SEARCH FEDERAL RULES OF BANKRUPTCY PROCEDURE

Go
• Wex: Bankruptcy Overview

0

Donations cover only 20% of our costs

**Chapter 7 Means Test**
www.Chapter7.com
Determine If Chapter 7 Is an Option for You, Complete a Free Evaluation

**Chapter 7 Filing**
www.BankruptcyCentral.com
Complete a Bankruptcy Evaluation to Begin the Chapter 7 Filing Process

AdChoices ▷

LAW ABOUT.  ARTICLES FROM WEX

• Secured debt
• Bankruptcy
• Debtor and creditor
• 341 notice
• Writ of execution

FIND A LAWYER

All lawyers

GET INVOLVED

LII Announce Blog
LII Supreme Court Bulletin

MAKE A DONATION
CONTRIBUTE CONTENT
BECOME A SPONSOR
GIVE FEEDBACK

### After Chapter 7 Mortgages
chapter7-mortgage.lendgo.com
Rates at 2.3%. $150,000 Mortgage for $577/mo. Free Quotes! 2.6%apr

AdChoices ▷

incorporates such a list as part of Official Form No. 6, the schedule of the debtor's assets, rather than requiring a separate list and filing. Rule 1007, to which subdivision (a) refers, requires that schedule to be filed within 15 days after the order for relief, unless the court extends the time.

Section 522(1) also provides that a dependent of the debtor may file the list if the debtor fails to do so. Subdivision (a) of the rule allows such filing from the expiration of the debtor's time until 30 days thereafter. Dependent is defined in §522(a)(1).

*Subdivision (d)* provides that a proceeding by the debtor, permitted by §522(f) of the Code, is a contested matter rather than the more formal adversary proceeding. Proceedings within the scope of this subdivision are distinguished from proceedings brought by the trustee to avoid transfers. The latter are classified as adversary proceedings by Rule 7001.

### NOTES OF ADVISORY COMMITTEE ON RULES—1991 AMENDMENT

*Subdivision (b)* is amended to facilitate the filing of objections to exemptions claimed on a supplemental schedule filed under Rule 1007(h).

### COMMITTEE NOTES ON RULES—2000 AMENDMENT

This rule is amended to permit the court to grant a timely request for an extension of time to file objections to the list of claimed exemptions, whether the court rules on the request before or after the expiration of the 30-day period. The purpose of this amendment is to avoid the harshness of the present rule which has been construed to deprive a bankruptcy court of jurisdiction to grant a timely request for an extension if it has failed to rule on the request within the 30-day period. See *In re Laurain*, 113 F.3d 595 (6th Cir. 1997), *Matter of Stoulig*, 45 F 3d 957 (5th Cir. 1995), *In re Brayshaw*, 912 F 2d 1255 (10th Cir. 1990). The amendments clarify that the extension may be granted only for cause. The amendments also conform the rule to §522(l) of the Code by recognizing that any party in interest may file an objection or request for an extension of time under this rule. Other amendments are stylistic.

*GAP Report on Rule 4003(b).* The words "trustee or creditor" were replaced by "party in interest" to conform to §522(l) of the Bankruptcy Code which permits any party in interest to object to claimed exemptions. Style revisions also were made to the published draft.

### COMMITTEE NOTES ON RULES—2008 AMENDMENT

Subdivision (b) is rewritten to include four paragraphs.

Subdivision (b)(2) is added to the rule to permit the trustee to object to an exemption at any time up to one year after the closing of the case if the debtor fraudulently claimed the exemption. Extending the deadline for trustees to object to an exemption when the exemption claim has been fraudulently made will permit the court to review and, in proper circumstances, deny improperly claimed exemptions, thereby protecting the legitimate interests of creditors and the bankruptcy estate. However, similar to the deadline set in §727(e) of the Code for revoking a discharge which was fraudulently obtained, an objection to an exemption that was fraudulently claimed must be filed within one year after the closing of the case. Subdivision (b)(2) extends the objection deadline only for trustees.

Subdivision (b)(3) is added to the rule to reflect the addition of subsection (q) to §522 of the Code by the 2005 Act. Section 522(q) imposes a $136,875 limit on a state homestead exemption if the debtor has been convicted of a felony or owes a debt arising

from certain causes of action. Other revised provisions of the Code, such as §727(a)(12) and §1328(h), suggest that the court may consider issues relating to §522(q) late in the case, and the 30-day period for objections would not be appropriate for this provision.

Subdivision (d) is amended to clarify that a creditor with a lien on property that the debtor is attempting to avoid on the grounds that the lien impairs an exemption may raise in defense to the lien avoidance action any objection to the debtor's claimed exemption. The right to object is limited to an objection to the exemption of the property subject to the lien and for purposes of the lien avoidance action only. The creditor may not object to other exemption claims made by the debtor. Those objections, if any, are governed by Rule 4003(b).

Other changes are stylistic.

*Changes Made After Publication.* The deadline for filing objections to exemptions under subdivision (b)(1) was returned to 30 days after the conclusion of the §341 meeting of creditors rather than the 60 day period proposed in the published rule. The second paragraph of the Committee Note which discussed this change was therefore deleted. Subdivisions (b)(2) and (b)(3) were amended to add the debtor and the debtor's attorney to the list of persons to whom objections to exemptions must be delivered.

‹ Rule 4002. Duties of Debtor          up          Rule 4004 Grant or Denial of
                                                              Discharge ›

ABOUT LII        CONTACT US        ADVERTISE HERE        HELP        TERMS OF USE        PRIVACY

LAST PAGE